# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA, FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA, and THE STATE OF FLORIDA, ex rel, THEODORE A. SCHIFF, M.D.<br><br>Plaintiffs,<br><br>v.<br><br>ROBERT A. NORMAN, D.O., ROBERT A. NORMAN, D.O., P.A., a Florida professional association HEALTHCARE DEVELOPMENT, LLC, a Florida Limited Liability Company<br><br>Defendants. | CASE NO. 8:15 cv1506T23 AEP<br><br>FILED UNDER SEAL |

## COMPLAINT FOR DAMAGES AND OTHER RELIEF UNDER THE *QUI TAM* PROVISIONS OF THE FALSE CLAIMS ACT AND DEMAND FOR JURY TRIAL



FILED 2015 JUN 25 PM 2:13

(S-1)

## TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................. 1
II. JURISDICTION AND VENUE ....................................................................... 1
III. THE PARTIES ................................................................................................. 2
IV. GOVERNMENT HEALTHCARE PROGRAMS ............................................ 3
V. THE LAW ........................................................................................................ 4
    A. The False Claims Act ............................................................................ 4
VI. DEFENDANTS' FRAUDULENT SCHEMES – UPCODING AND FRAUDULENT BILLING FOR RADIATION TREATMENTS ................................................ 5
VII. COUNTS ........................................................................................................ 11

## I. INTRODUCTION

1. This is an action brought on behalf of the UNITED STATES OF AMERICA and the STATE OF FLORIDA (collectively, the "Government"), to recover treble damages and civil penalties against Defendants, pursuant to the Federal False Claims Act ("FCA"), 31 U.S.C. § 3729 et seq., as amended, and the Florida False Claims Act, Fla. Stat. § 68.082 et seq. (collectively "The False Claims Acts").

2. Plaintiff Theodore A. Schiff, M.D. ("RELATOR") brings this *qui tam* action to recover treble damages and civil penalties on behalf of the Government. The allegations in this Complaint arise from Relator's evidence, as set forth more specifically below, that the above-captioned Defendants have submitted false and fraudulent claims for reimbursement to the Government.

## II. JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. Section 131 and 31 U.S.C. Sections 3730(b) and 3732(a), which specifically confers jurisdiction.

4. This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. Section 3732(a) which authorizes nationwide service of process. Defendants can be found in, reside in, or have transacted business in the Middle District of Florida.

5. Venue is proper in this District pursuant to 31 U.S.C. Section 3732(a) because the Defendants can be found in, reside in, or have transacted business in the Middle District of Florida, and the alleged acts occurred in this District.

6. The allegations in this complaint are not based on a public disclosure of allegations or transactions in a criminal, civil or administrative hearing, in a Congressional, administrative or General Accounting Office report, hearing audit, or investigation, or from the news media. Further, to the extent RELATOR is aware of any public disclosures, this complaint (the "Complaint") is not

1

based upon such public disclosures. Relator SCHIFF has direct and independent knowledge, within the meaning of 31 U.S.C. Section 3730(e)(4)(B) and the analogous provisions of the Florida FCA, of the information on which the allegations set forth in this Complaint are based.

## III. **THE PARTIES**

7. RELATOR Theodore A. Schiff is a resident of Palm Beach County, Florida, and brings this action on behalf of himself, the STATE OF FLORIDA, and the UNITED STATES OF AMERICA. RELATOR is a double Board Certified Medical Doctor in Dermatology and Dermatopathology who is licensed to practice medicine in the State of Florida. RELATOR has among one of his specializations the treatment of skin cancer. RELATOR is the president and principal owner of Water's Edge Dermatology, LLC ("Water's Edge Dermatology"). The allegations set forth in this Complaint are based on personal investigation and testimony of witnesses.

8. Defendant Norman (a/k/a Robert A. Norman D.O.) ("NORMAN") is a physician, who resides in Hillsborough County, Florida, and who was licensed to practice medicine in the State of Florida at all times relevant to this Complaint.

9. Defendant, Robert A. Norman, D.O., P.A. ("NORMAN PA") is a Florida professional association owned and operated by NORMAN doing business at 8002 Gunn Highway, Tampa, Florida 33626.

10. Defendant Healthcare Development, LLC, ("HCD") is a Florida limited liability company owned and operated by NORMAN doing business at 8002 Gunn Highway, Tampa, Florida 33626.

11. NORMAN, NORMAN PA AND HCD are collectively and interchangeably referred to as NORMAN GROUP.

## IV. GOVERNMENT HEALTHCARE PROGRAMS

12. The UNITED STATES OF AMERICA, through the Department of Health and Human Services ("DHHS"), administers and funds the Medicare Program ("MEDICARE") under title XVIII of the Social Security Act 42 U.S.C. section 1395-1395ccc. MEDICARE is a federally subsidized health insurance system for disabled persons and persons over the age of sixty-five. Part A of the MEDICARE Program, 42 U.S.C. sections 1395c- 1395i-2, provides payments for basic hospitalization insurance costs. Part B of the MEDICARE Program, 42 U.S.C. sections 1395j- 1395ww, provides payments for physician services and certain medical and other health services. Either MEDICARE Part A or Part B covers the expenses of medically necessary treatments and services, provided that the individual meets the qualifications for enrollment in MEDICARE.

13. For outpatient treatment, all MEDICARE reimbursement is subject to Part B. 42 U.S.C. §§ 1395j-1395w-4. To obtain MEDICARE reimbursement pursuant to Part B, providers submit claims using forms known as CMS 1500s. Among the information the provider includes on a CMS 1500 form are certain five-digit codes, known as Common Procedural Codes, or CPT codes, that identify the services rendered and for which reimbursement is sought.

14. Any provider seeking MEDICARE reimbursement through Part B must certify on a CMS Form 1500 that "the services shown on this form were medically indicated and necessary for the health of the patient and were personally furnished by me or were furnished incident to my professional service by my employee under my immediate personal supervision."

15. Other government healthcare programs – including but not limited to Florida Medicaid and TRICARE – have similar structures and reimbursement rules, including reliance on the same CPT codes relied upon by Medicare.

16. As to Florida Medicaid, that program is jointly funded by the United States and by the State of Florida. Thus, to the extent the above-captioned defendants defrauded Florida Medicaid, they defrauded both the United States and the State of Florida.

## V. THE LAW

### A. The False Claims Act

17. The FCA, provides, *inter alia*, that any person who (1) "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," or (2) "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," is liable to the United States for a civil monetary penalty plus treble damages. 31 U.S.C. § 3729(a)(1)(A)-(B).

18. The terms "knowing" and "knowingly" are defined to mean "that a person, with respect to information (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A)(i)-(iii). Proof of specific intent to defraud is not required. 31 U.S.C. § 3729(b)(1)(B).

19. The term "claim" means "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that (1) is presented to an officer, employee, or agent of the United States; or (2) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Governments behalf or to advance a Government program or interest, and if the United States Government (a) provides or has provided any portion of the money or property requested or demanded; or (b) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded . . . ." 31 U.S.C. § 3729(b)(2)(A)(i)-(ii).

4

20. "[T]he term 'material' means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4).

21. Florida has enacted a False Claims Act which is modeled after the Federal FCA, and each contains provisions similar to those quoted above. RELATOR asserts claims under the Florida FCA for the State portion of Medicaid false claims detailed in this complaint.

## VI. DEFENDANTS' FRAUDULENT SCHEMES – UPCODING AND BILLING FOR RADIATION TREATMENTS

22. NORMAN GROUP routinely and fraudulently "upcodes" the radiation treatment provided to patients, i.e., NORMAN GROUP utilizes a CPT code which provides higher reimbursement from the government than the CPT code which is justified by the services and procedures NORMAN GROUP performs.

23. NORMAN GROUP utilizes two (2) radiation machines in the treatment of patients. One machine is used for in-office patients. The other is used for mobile patients. Both machines deliver a low level of radiation what is medically known as "superficial radiation."

24. Between approximately June 1, 2014 and September 30, 2014, in the course of investigating the allegations herein, RELATOR separately spoke to two NORMAN GROUP employees, Jane Doe #1 and Jane Doe #2. Upon inquiry by RELATOR, Jane Doe #1 stated that NORMAN GROUP had a radiation machine manufactured by Sensus known as the SRT-100 ("SRT-100"). Jane Doe #1 indicated that the SRT-100 was the only radiation machine used in the NORMAN GROUP'S office. This was confirmed by another Norman employee, Jane Doe #2, who was a member of NORMAN GROUP'S so-called radiation tech team. Jane Doe #2 stated that the only radiation machine in use in the NORMAN GROUP'S office was the SRT-100.

25. RELATOR is familiar with the SRT-100 machine and can state that it is capable only of superficial radiation.

5

26. NORMAN is the managing member of HCD. On its website (http://www.dermhealthcare.com/) HCD promotes the ability to deliver mobile radiation treatments to nursing homes and assisted living facilities. The HCD website depicts the SRT-100 as the radiation machine which is used by HCD to deliver the mobile radiation treatments. A picture of the SRT-100 from Defendant HCD's website is shown below:



26. The website also depicts a much higher dose radiation machine known as a linear accelerator. Linear accelerators are extremely expensive machines, are built-in, and are not mobile in any way. A photo of a linear accelerator is shown below:



27. Unlike a linear accelerator which is used to administer high voltage radiation treatments of up to 12 Mv, the SRT-100 can only administer superficial radiation at significantly lower voltage levels of between 50 and 100Kv.

28. Linear accelerators are highly specialized and very expensive pieces of equipment that must be housed in concrete vaults, complete with specialized electrical service and highly advanced cooling systems which must be housed outside the building in which the linear accelerator resides.

29. RELATOR personally inspected NORMAN GROUP'S office location prior to filing this action, and personally observed that there was neither upgraded electrical service nor specialized cooling units, both of which would be required if NORMAN GROUP was operating a linear accelerator.

30. Based on the testimony of NORMAN GROUP employees, the physical requirements of a linear accelerator, and RELATOR'S inspection of NORMAN GROUP'S office, NORMAN GROUP is not using a linear accelerator in either its office practice or its mobile operation.

31. The proper CPT[1] code for irradiating patients with the superficial treatment machines utilized by NORMAN GROUP is 77401. Medicare pays a reimbursement of approximately $21 per billing session for treatments billed under CPT code 77401.

32 However, NORMAN GROUP bills CPT code 77402 for the superficial radiation treatments performed on NORMAN GROUP patients. CPT code 77402 is a rarely used code

---

[1] CPT is the trademarked acronym of the American Medical Association for Current Procedural Terminology.

7

because it is only reimbursed when linear accelerators are used.[2] Treatment with linear accelerators is dramatically different than treatment with superficial radiation. Lineal accelerators generate a radiation level of greater than 50 times the radiation level generated with equipment like the SRT-100 used by NORMAN GROUP for superficial radiation treatment.

33. Although NORMAN GROUP'S radiation treatments, both in-office and mobile, are performed using SRT-100 superficial radiation therapy machines, NORMAN GROUP falsely bills for radiation treatments using billing code CPT 77402.

34. The Medicare reimbursement rate for CPT code 77402 is approximately $154 per billing session. Thus, CPT code 77402 has a reimbursement rate of approximately seven (7x) times greater than the reimbursement rate for CPT code 77401.

35. Further, as a result of NORMAN GROUP'S improper upcoding for superficial radiation treatments as hereinabove described, RELATOR can state that a majority of submissions made by NORMAN GROUP under related radiation CPT codes, including CPT code 77407 (Revised Radiation treatment delivery, 2 separate treatment areas, 3 or more ports on a single treatment area, use of multiple blocks, up to 5 MeV); 77412 (Revised Radiation treatment delivery, 3 or more separate treatment areas, custom blocking, tangential areas, custom blocking, tangential ports, wedges rotational beam, compensators, electron beam; up to 5 MeV); 77370 (special physics consultation); 77262 (therapeutic radiology treatment planning; INTERMIEDATE); 77290 (therapeutic radiology simulation – aided field setting; complex) and 77469 (intraoperative radiation treatment management).

---

[2] See, Marta Van Beek, MD, MPH, Academy Issues Position Statement on Superficial Radiation Therapy and Electronic Surface Brachytherapy, American Academy of Dermatology, American Academy of Dermatology (Dec. 20, 2013); http://www.aad.org/members/publications/member-to-member/2013-archive/december-20-2013/academy-issues-position-statement-on-superficial-radiation-therapy-and-electronic-surface-brachytherapy. See also, Code Development, ASTRO (last updated Mar. 21, 2014) https://www.astro.org/Practice-Management/Radiation-Oncology-Coding/Code-Development.aspx

are also fraudulent.

36. By definition in the CPT manual and according to explanations found therein, these codes are reserved for more complex radiation therapy procedures and are not appropriate for use in connection with superficial radiation therapy.

37. NORMAN GROUP'S fraud has caused substantial harm to the government. With respect to Medicare, in 2012 alone, NORMAN GROUP billed (i) $64,750.00 for CPT code 77402 and was paid $51,430.00; (ii) $172,992.00 for CPT Code 77407 and was paid $82,256.00; (iii) $96,136.00 for CPT Code 77412 and was paid $36,839.00; and (iv) $17,922.00 for CPT code 77370 and was paid $7,656. In 2013 NORMAN GROUP's billing dramatically increased. It billed (i) $414,829 for CPT code 77402 and was paid $233,386; (ii) $211,701 for CPT code 77407 and was paid $107,682; (iii) $83,320 for CPT code 77412 and was paid 43,466; and (iv) $7,787 for CPT code 77370 and was paid $4,059. As NORMAN GROUP does not have the capacity to perform the radiation treatments indicated by CPT code 77402, every bill submitted by NORMAN GROUP for CPT code 77402, as well as the related CPT codes 77407, 774212 and 77370, is fraudulent.

38. In addition, in 2013 NORMAN GROUP billed several codes (not billed in 2012) that would not typically be used in the setting of superficial radiation therapy. It billed (i) $5,288 for CPT code 77262 and was paid $2,686; (ii) $268,203 for CPT code 77290 and was paid $140,108; and (iii) $69,757 for CPT code 77469 and was paid $36,409. These entries are consistent with NORMAN GROUP's pattern of billing for services which are either not provided at all or are not appropriate based upon the services actually rendered.

VII. **COUNTS**

**COUNT ONE**
**FEDERAL FALSE CLAIMS ACT**
**31 U.S.C. SECTION 3729 et seq.**

9

39. RELATOR realleges and incorporates by reference the allegations made in the preceding paragraphs of this Complaint as though full set forth herein.

40. Through the acts described above, Defendants knowingly presented or knowingly caused its agents and employees to present to the United States Government false and fraudulent claims, records and statements in order to obtain reimbursement for health care services.

41. Defendants knowingly created, used and/or caused to be created or used false records or statements in order to have false and fraudulent claims approved and paid by the United States Government.

42. By reason of Defendants' conduct, the United States Government has been damaged by a significant loss of funds, the exact amount of which is unknown at this time.

## COUNT TWO
## THE FLORIDA FALSE CLAIMS ACT (the "Act"),
## FLA. STAT. §§ 68.082(2) et seq.

43. RELATOR re-alleges and incorporates by reference each and every allegation contained in the paragraphs above as though fully set forth herein.

44. Through these acts, the Defendants have knowingly presented or caused to be presented false or fraudulent claims for payment to the State in violation of Section 68.082(2)(a) of the Act. Such claims caused actual damages to the State.

45. Through these acts, the Defendants knowingly made, used, or caused to be made or used false records or statements material to a false or fraudulent claim to the State, in violation of Section 68.082(2)(a) of the Act. Such claims caused actual damages to the State.

## PRAYER FOR RELIEF

WHEREFORE, the United States demands and prays that judgment be entered in its favor against Defendants as follows:

(i) That the Court enters judgment against Defendants in an amount equal to three times the amount of damages the Government sustained as a result of Defendants' actions, as well as a civil penalty against each Defendant of $10,000 for each violation of 31 U.S.C. section 3729 et seq. and Florida Statute Section 68.082(2)(a), et seq., and a civil penalty against each Defendant of $15,000 for each individual with respect to whom false or misleading information was given pursuant to 42 U.S.C. section 1320a-7a;

(ii) That RELATOR is awarded all costs and expenses of this action, including attorneys' fees; and

(iii) That the Government and RELATOR receive all such other relief as the Court deems just and proper.

(iv) On the First and Second Counts under the False Claims Acts, for the amount of the United States' damages, trebled as required by law, and such civil penalties as are required by law, together with all such further relief as may be just and proper.

## REQUEST FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, RELATOR demands a trial by jury.

Dated: June 24th, 2015

LAWRENCE S. KLITZMAN, P.A.

By: _____
Lawrence S Klitzman
Fla. Bar No. 312878
Sawgrass Commerce Center
1391 Sawgrass Corporate Parkway
Sunrise, FL 33323
Tel: (954) 384-4421
Fax: (954) 389-3579

BERGER & MONTAGUE, P.C.
Daniel R. Miller

1622 Locust Street
Philadelphia, PA 19103
Tel: (215) 875-3000
Fax: (215) 875-5807