**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, and THE STATE OF FLORIDA, ex rel., THEODORE A. SCHIFF, M.D., Plaintiffs, v. ROBERT A. NORMAN, D.O., CAROL NORMAN, ROBERT A. NORMAN, D.O., P.A., a Florida professional association, DERMATOLOGY HEALTHCARE, LLC, a Florida Limited Liability Company, Defendants. | Case No. 8:15-cv-1506-T-23AEP |

**PLAINTIFF-RELATOR'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

Lawrence S. Klitzman
KLITZMAN LAW GROUP, PLLC
1391 Sawgrass Corporate Parkway
Sunrise, FL 33323
Tel.: (954) 384-4421
Fax: (954) 389-9579

-and-

Daniel R. Miller
Lane L. Vines
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Tel.: (215) 875-3000
Fax: (215) 875-4604

*Attorneys for Plaintiff-Relator*

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... ii

PRELIMINARY STATEMENT ..... 1

SUMMARY OF ALLEGATIONS ..... 1

ARGUMENT ..... 4

I. RELATOR STATES VIABLE CLAIMS UNDER THE FCA ..... 4

A. The Complaint Meets the Requirements of FRCP 12 ..... 5

B. The Complaint Meets the Requirements of FRCP 9(b) ..... 8

C. Relator’s Claims Are Not Precluded by the Public Disclosure Bar ..... 11

II. THE COMPLAINT ADEQUATELY ALLEGES A CLAIM FOR CONSPIRACY ..... 13

III. RELATOR STATES VIABLE CLAIMS UNDER THE FFCA ..... 16

CONCLUSION ..... 17

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*A1 Procurement, LLC v. Hendry Corp.*,
No. 11-cv-23582, 2012 WL 6214546 (S.D. Fla. Dec. 13, 2012) .............................................. 9

*American Dental Assoc. vs. Cigna Corp.*,
605 F. 3d 1283 (11th Cir. 2010) .............................................................................................. 10

*Bell Atlantic v. Twombly*,
550 U.S. 544 (2007) ............................................................................................................. 4-5

*Bryant v. Dupree*,
252 F.3d 1161 (11th Cir. 2001) ................................................................................................ 17

*Carver Middle Sch. Gay-Straight Alliance v. Sch. Bd. of Lake Cty., Fla.*,
2 F. Supp. 3d 1277 (M.D. Fla. 2014) ........................................................................................ 4

*Cooper v. Blue Cross and Blue Shield of Fla., Inc.*,
19 F.3d 562 (11th Cir. 1994) .................................................................................................. 12

*Corsello v. Lincare, Inc.*,
428 F.3d 1008 (11th Cir. 2005) ................................................................................................ 13

*Dickerson v. Alachua County Com'n*,
200 F.3d 761 (11th Cir. 2000) .................................................................................................. 14

*Friedlander v. Nims*,
755 F.2d 810 (11th Cir. 1985) .................................................................................................. 10

*Gonzalez v. Lee Cty. Hous. Auth.*,
161 F.3d 1290 (11th Cir. 1998) .................................................................................................. 8

*Graves v. Plaza Med. Centers, Corp.*,
No. 10-cv-23382, 2015 WL 11199839 (S.D. Fla. Apr. 1, 2015) ............................................ 10

*Heckler v. Community Health Servs. of Crawford County, Inc.*,
467 U.S. 51 (1984) ............................................................................................................... 7-8

*Hill v. Morehouse Med. Assocs., Inc.*,
No. 02-cv-14429, 2003 WL 22019936 (11th Cir. Aug. 15, 2003) ........................................ 8-9

*Hopper v. Solvay Pharms., Inc.*,
588 F. 3d 1318 (11th Cir. 2009) .............................................................................................. 10

*Jackam v. Hospital Corp. of Am. Mideast, Ltd.*,
800 F.2d 1577 (11th Cir. 1986)............................................................................ 6

*Jackson v. Bellsouth Telecomms.*,
372 F.3d 1250 (11th Cir. 2004)............................................................................ 4

*JES Props., Inc. v. USA Equestrian, Inc.*,
253 F. Supp. 2d 1273 (M.D. Fla. 2003)............................................................... 14

*McAndrew v. Lockheed Martin Corp.*,
206 F.3d 1031 (11th Cir. 2000)..................................................................... 15-16

*McNutt v. Haleyville Med. Supplies, Inc.*,
423 F.3d 1256 (11th Cir. 2005)............................................................................ 6

*Moecker v. Honeywell Int'l, Inc.*,
144 F. Supp. 2d 1291 (M.D. Fla. 2001)............................................................... 13

*Rock Island, A. & L.R. Co. v. United States*,
254 U.S. 141 (1920) ............................................................................................ 7

*Speaker v. U.S. Dep't. of Health & Human Servs.*,
623 F.3d 1371 (11th Cir. 2010) ........................................................................... 4

*United States ex rel Atkins v. McInteer*,
470 F.3d 1350 (11th Cir. 2006)............................................................................ 9

*United States ex rel. Atkins v. McInteer*,
345 F. Supp. 2d 1302 (N.D. Ala. 2004).......................................................... 10-11

*United States ex rel. Bame v. Breathe Easy Pulmonary Servs., Inc.*,
597 F. Supp. 2d 1280 (M.D. Fla. 2009)............................................................... 15

*United States ex rel. Bingham v. BayCare Health System*,
No. 14-cv-73-T-23EAJ, 2015 U.S. Dist. LEXIS 107220 (M.D. Fla. Aug. 14, 2015) ................ 11

*United States ex rel. Clausen v. Lab. Corp. of Am.*,
290 F.3d 1301 (11th Cir. 2002)........................................................................6, 11

*United States ex rel. Freedman v. Suarez-Hoyos*,
781 F. Supp. 2d 1270 (M.D. Fla. 2011)................................................................. 6

*United States ex rel. Gacek v. Premier Med. Mgmt., Inc.*,
No. 14-cv-0342-WS-B, 2017 WL 2838179 (S.D. Ala. June 30, 2017) .................................. 15

*United States ex rel. Harris v. Lockheed Martin Corp.*,
905 F. Supp. 2d 1343 (N.D. Ga. 2012)........................................................................ 15-16

*United States ex rel. Heater v. Holy Cross Hosp., Inc.*,
510 F. Supp. 2d 1027 (S.D. Fla. 2007)........................................................................8, 10

*United States ex rel. King v. DSE, Inc.*,
No. 08-cv-2416-T-23EAJ, 2011 WL 1884012 (M.D. Fla. May 17, 2011) ................................ 9

*United States ex rel. Kozhukh v. Constellation Tech. Corp.*,
64 F. Supp. 2d 1239 (M.D. Fla. 1999)..........................................................................5, 8

*United States ex rel. Osheroff v. Tenet Healthcare Corp.*,
No. 09-cv-22253, 2012 WL 2871264 (S.D. Fla. July 12, 2012).......................................... 9-13

*United States ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc.*,
906 F. Supp. 2d 1264 (N.D. Ga. 2012)........................................................................10, 12

*United States ex rel. Sharpe v. American Ambulance*,
No. 13-cv-1171-T-33AEP, 2017 WL 2840574 (M.D. Fla. July 3, 2017) ................................ 17

*United States v. Adventist Health Sys./Sunbelt, Inc.*,
No. 10-cv-1062-ORL-28, 2012 WL 3105586 (M.D. Fla. July 30, 2012) ................................ 16

*United States v. Crumb*,
No. 15-cv-0655-WS-N, 2016 WL 4480690 (S.D. Ala. Aug. 24, 2016)................................7, 17

*United States v. Cypress Health Sys. Fla., Inc.*,
No. 09-cv-137-SPM-GRJ, 2012 WL 467894 (N.D. Fla. Feb. 14, 2012) ................................ 16

*United States v. Inst. of Cardiovascular Excellence, PLLC*,
No. 11-cv-406-OC-37TBS, 2015 WL 12866448 (M.D. Fla. Nov. 5, 2015) ............................ 16

*United States v. Marder*,
208 F. Supp. 3d 1296 (S.D. Fla. 2016).......................................................................... 7

*United States v. Premier Hospitalists PL*,
No. 14-cv-2952-T-33TBM, 2017 WL 119773 (M.D. Fla. Jan. 12, 2017) ...................... 4, 16-17

*United States v. Silvestri*,
409 F.3d 1311 (11th Cir. 2005)................................................................................ 13

**Statutes**

18 U.S.C. § 371 ........................................ 15-16

31 U.S.C. § 3729 ........................................ 4, 5, 13, 16

Fla. Sta. §§ 68.082 ***et seq.*** ........................................ 4

**Rules**

Fed. R. Civ. P. 9(b) ........................................ 1, 5, 8-11

Fed. R. Civ. P. 12(b)(6) ........................................ 1, 5-6

Fed. R. Civ. P. 15(a) ........................................ 17

Relator Theodore A. Schiff ("Relator") respectfully submits this memorandum of law in opposition to the motion to dismiss (Dkt. 27) filed by defendants Robert A. Norman, D.O. ("Dr. Norman"), Carol Norman ("Carol Norman"), Robert A. Norman, D.O., P.A., a Florida professional association ("Norman Professional Association") and Dermatology Healthcare, LLC, a Florida limited liability company ("Dermatology Healthcare") (collectively, "Defendants" or the "NORMAN GROUP").[1]

## PRELIMINARY STATEMENT

Defendants primarily argue that Relator's Complaint fails to state a claim under the federal False Claims Act ("FCA") and is not pled with sufficient particularity, citing Fed. R. Civ. P. 12(b)(6) and 9(b). These arguments fail because the Complaint includes detailed allegations that more than meet the applicable pleading requirements and provide Defendants with ample notice regarding the facts of the alleged misconduct. Defendants' additional arguments that Relator fails to allege a conspiracy and fails to state a cause of action under the Florida False Claims Act ("FFCA") are also unavailing. For the reasons set forth below, Defendants' motion must be denied under well-established precedent of this Court and the Eleventh Circuit.

## SUMMARY OF ALLEGATIONS

Relators' Complaint alleges that Defendants engaged in two separate, fraudulent Medicare billing schemes related to dermatology treatments.

The first scheme relates to extreme overbilling in connection with superficial radiation treatments administered to patients of the NORMAN GROUP. (¶¶ 57-72). Medicare provides federally funded health insurance, including for radiation therapy. (¶¶ 13, 21). Defendants were all

---

[1] Citations to Defendants' Motion to Dismiss Relator's First Amended Complaint are referenced as "Defs. Br." and citations to Relator's operative First Amended Complaint (Dkt. 20) ("Complaint") as "¶ ___."

enrolled in Medicare and certified their agreement to abide by all applicable Medicare laws, regulations and program instructions. (¶¶ 48-50). Claims are submitted to and paid by Medicare using numeric codes ("CPT codes") to indicate specific medical services. (¶ 16). The CPT code for superficial (*i.e.*, basic) radiation is 77401. (¶ 28). More sophisiticaed and higher-level radiation treatments are billed under CPT codes 77402, 77407 and 77412. (¶¶ 28-30).

Defendants provided dermatology treatments using *only* superficial radiation, which should have billed under CPT code 77401. Nevertheless, Defendants billed Medicare for reimbursements under CPT code 77402, 77407 or 77412, which are the billing codes for higher-level radiation treatments using equipment called a linear accelerator. By contrast, all radiation treatments administered by the NORMAN GROUP were done using superficial radiation equipment known as an SRT-100 (¶ 57). (¶¶ 26-27).[2]

The second fraudulent scheme alleged arises from Defendants' use of non-physician providers to administer radiation treatments without required physician supervision. (¶¶ 73-85). The NORMAN GROUP provides mobile radiation treatment services to residents of assisted living, nursing and other congregate care facilities ("Facilities") throughout the State of Florida including at Central Tampa Assisted Living Facility, 5010 N. 40th St., Tampa, FL 33610; All Nurses ALF LLC, 8701 N. 34th St., Tampa, FL 33604; and Belvedere Commons of Tampa, 1513 W. Fletcher Ave., Tampa, FL 33612. (¶ 73). The NORMAN GROUP sends mobile technicians across the state, including to Ocala, Orlando and Miami and as far north as the Panhandle; however,

[2] The equipment used for CPT code 77402, as well as 77407 and 77412, is a much more expensive device, known as a linear accelerator or "linac," which is so powerful that for safety purposes it requires placement inside an actual concrete bunker. A linac requires specialized electrical service and highly advanced cooling systems which must be housed outside the building in which the linear accelerator resides. (¶ 31). Between 2010 and 2014, reimbursement for CPT Code 77401 ranged between $19.51 and $26.03 while the reimbursement amount for radiation reimbursed under CPT Codes 77402, 77407 and 77412 reached as high as $249.59. (¶ 32).

these technicians are not physicians. (¶ 74). The radiation treatment services rendered to residents of these Facilities was delivered by Defendants use of a mobile van housing an SRT-100 superficial radiation machine. (¶¶ 75, 76). Based upon the type and size of the mobile vehicles used by the NORMAN GROUP, those vehicles cannot house the type of equipment (*i.e.*, a linear accelerator) which would be required to bill under CPT Code 77402. Indeed, those vehicles have neither the requisite shielding nor the electrical capacity to accommodate any radiation equipment other than a superficial radiation machine. (¶ 77). Also, the van signage, "Non-Surgical Skin Cancer Therapy Mobile Radiation Services" further indicates that the NORMAN GROUP mobile services are limited to administering radiation treatment notwithstanding that other forms of non-radiation treatment, both surgical and non-surgical, may be indicated for a particular case. (¶ 78). Based upon communications with the NORMAN GROUP office personnel as well as personnel at several Facilities, the Complaint alleges that all radiation treatments services rendered at the Facilities by use of the mobile van were rendered without direct physician supervision as required under Medicare regulations. (¶ 79; *see also* ¶ 22, citing *Medicare Carriers Manual*, Transmittal 1725, Ch. 90, § 90, Sept. 27, 2001). Accordingly, all Medicare claims submissions by the NORMAN GROUP seeking reimbursement for any radiation treatment services rendered at Facilities through use of the mobile van unit were false claims.

In carrying out the above fraudulent billing schemes, Defendants knowingly presented, or knowingly caused agents and employees to present, to the United States Government and the State of Florida false and fraudulent claims, records and statements in order to obtain reimbursement for health care services. These services included radiation therapy, evaluation and management services, intraoperative radiation therapy and unsupervised radiation treatments. Defendants also knowingly created, used and/or caused to be created or used false records or statements in order to have false and fraudulent claims approved and paid. (¶¶ 87-89, 97-98).

The Complaint seeks relief against Defendants based on: 1) violation of the FCA, 31 U.S.C. §§ 3729(a)(1) and (a)(2), arising from Defendants' presentation of false claims and use of false records; 2) violation of the FCA, 31 U.S.C. § 3729(a)(3), arising from Defendants' conspiracy to violate the FCA; and 3) violation of the FFCA, Fla. Sta. §§ 68.082(2) *et seq.*, the state statutory analog of the FCA.

**ARGUMENT**

On a motion to dismiss, the Court "accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff." *United States v. Premier Hospitalists PL*, No. 14-cv-2952-T-33TBM, 2017 WL 119773, at *3 (M.D. Fla. Jan. 12, 2017) (citing *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004)). The Court also "favors the plaintiff with all reasonable inferences from the allegations in the complaint." *Id.*

"[T]o avoid dismissal, a complaint must allege 'enough facts to state a claim to relief that is plausible on its face' and that rises 'above the speculative level.'" *Carver Middle Sch. Gay-Straight Alliance v. Sch. Bd. of Lake Cty., Fla.*, 2 F. Supp. 3d 1277, 1281 (M.D. Fla. 2014) (quoting *Speaker v. U.S. Dep't. of Health & Human Servs.*, 623 F.3d 1371, 1380 (11th Cir. 2010)); *accord Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Carver*, 2 F. Supp. 3d at 1281 (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). This means that a plaintiff need only "allege sufficient facts to nudge his 'claims across the line from conceivable to plausible.'" *Id.* (quoting *Twombly,* 550 U.S. at 570).

**I. RELATOR STATES VIABLE CLAIMS UNDER THE FCA**

Defendants first argue that Relator fails to state a claim under Fed. R. Civ. P. 12(b)(6), relying on generic citations to the Supreme Court decisions in *Bell Atlantic v. Twombly*, 550 U.S.

544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Defendants also argue that Relator's allegations are not plead with particularity under FRCP 9(b), and Defendants muse whether the Complaint contains publicly available information. These boilerplate arguments are meritless.

**A. The Complaint Meets the Requirements of FRCP 12**

"In order to recover under the False Claims Act, it must be alleged and proven that the defendant:

> (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government ... a false or fraudulent claim for payment or approval; (2) knowingly makes, uses or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government; [or] (3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid."

*United States ex rel. Kozhukh v. Constellation Tech. Corp.*, 64 F. Supp. 2d 1239, 1242 (M.D. Fla. 1999) (citing 31 U.S.C.A. § 3729(a)). "At least two elements are necessary to state a claim under these provisions: (1) a claim for payment from the Government, (2) that is false or fraudulent." *Id.*

Here, Relator has detailed two separate, fraudulent Medicare billing schemes that Defendants used to defraud the Government. (¶¶ 57-72, 73-80). As alleged, through those and other acts, Defendants "knowingly presented or knowingly caused its agents and employees to present to the United States Government false and fraudulent claims, records and statements in order to obtain reimbursement for health care services including radiation therapy, evaluation and management services, intraoperative radiation therapy and unsupervised radiation treatments." (¶ 87). Moreover, "Defendants knowingly created, used and/or caused to be created or used false records or statements in order to have false and fraudulent claims approved and paid by the United States Government." (¶ 88). Defendants also "knowingly presented or caused to be presented false or fraudulent claims for services that were billed in violation of applicable Medicare statutes, regulations and rules for radiation therapy, evaluation and management services, intraoperative radiation therapy and unsupervised

radiation treatments." (¶ 89).[3] And, "[b]y reason of Defendants' conduct, the United States Government has been damaged by a significant loss of funds …." (¶ 90). As such, Relator's allegations state a cause of action for violation of the FCA. *Accord United States ex rel. Freedman v. Suarez-Hoyos,* 781 F. Supp. 2d 1270, 1272 (M.D. Fla. 2011) (sustaining allegations in *qui tam* case involving fraudulently miscoded claims for dermatology treatments; citing *McNutt v. Haleyville Med. Supplies, Inc.*, 423 F.3d 1256 (11th Cir. 2005)). Defendants' arguments to the contrary ignore that "[t]he standard on a 12(b)(6) motion is not whether the plaintiff will ultimately prevail in his or her theories, but whether the allegations are sufficient to allow the plaintiff to conduct discovery in an attempt to prove the allegations." *Id.* (citing *Jackam v. Hospital Corp. of Am. Mideast, Ltd.,* 800 F.2d 1577, 1579 (11th Cir. 1986)).

Defendants are correct that "[t]he False Claims Act does not create liability merely for a health care provider's disregard of Government regulations or improper internal policies ***unless***, as a result of such acts, the provider knowingly asks the Government to pay amounts it does not owe." Defs. Br. at 4 (emphasis added) (citing *United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1311 (11th Cir. 2002)). However, Defendants' argument that Relator has not demonstrated that "Defendant's failure to disclose noncompliance with applicable regulations … were material to the government's pay to decision" is absurd. The CPT coding requirements and the physician supervision requirements cited by Relator spell out in detail what is required in order to get paid. As to the upcoding scheme, Defendants billed and were paid by the Government up to $250 per radiation treatment which, had the Government known the truth, would have netted

3 "[W]here the government pays funds to a party, and would not have paid those funds had it known of a violation of a law or regulation, the claim submitted for those funds contained an implied certification of compliance with the law or regulation and was fraudulent." *Freedman*, 781 F. Supp. at 1272.

Defendants only $25 per treatment. That the Government created these separate CPT codes and determined how much it would pay for the treatments provided pursuant to those codes establishes that the Government would not have paid the overcharges had it known of Defendants' scheme. *United States v. Marder*, 208 F. Supp. 3d 1296, 1314 (S.D. Fla. 2016) (denying in part summary judgment in dermatology *qui tam* action similar to case at bar, where "Defendants routinely submitted claims that were false because the services were (1) supported by false documentation [and] (2) upcoded to a higher CPT reimbursement") (footnotes omitted). "Under any reasonable reading of the Complaint, such misrepresentations by Defendants have been pleaded in a manner that reflects how they were both non-compliant with program requirements and material to the Government's decisions to pay the claims." *United States v. Crumb,* 2016 WL 4480690, at *15 n.20. In other words, there is no reason to believe the Government would simply disregard the fact that Defendants were fraudulently upcoding and submitting hundreds of thousands of dollars in false Medicare claims.

Turning to the FCA's knowledge requirement, the Supreme Court of the United States has spoken clearly regarding the duty of Medicare providers such as Defendants to know Medicare's rules and regulations, particularly those which involve the submission of claims to government healthcare programs:

> Justice Holmes wrote: "Men must turn square corners when they deal with the Government." *Rock Island, A. & L.R. Co. v. United States*, 254 U.S. 141, 143, 41 S.Ct. 55, 56, 65 L.Ed. 188 (1920). This observation has its greatest force when a private party seeks to spend the Government's money. Protection of the public fisc requires that those who seek public funds act with scrupulous regard for the requirements of law; respondent could expect no less than to be held to the most demanding standards in its quest for public funds. This is consistent with the general rule that those who deal with the Government are expected to know the law and may not rely on the conduct of Government agents contrary to law.
>
> As a participant in the Medicare program, respondent had a duty to familiarize itself with the legal requirements for cost reimbursement.

*Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 63-64 (1984) (footnote omitted). *Accord Gonzalez v. Lee Cty. Hous. Auth.*, 161 F.3d 1290, 1304 (11th Cir. 1998) ("[I]ndividuals presumptively have notice of their legal duties under federal regulations.").

Defendants here were thus under a duty to know the requirements of the CPT codes that they used to bill the Government, and to know the physician supervision requirements attendant to providing mobile radiation services. That Defendants submission of claims which are indisputably in conflict with the applicable billing rules establishes at a minimum that Defendants recklessly disregarded that these claims were false. Nothing more is required, particularly in light of the fact that scienter may be alleged generally. Fed. R. Civ. P. 9(b) (knowledge and scienter may be alleged generally). The Complaint definitively alleges that the presentment of these false claims to the Government was done knowingly. (¶¶ 87-89).

**B. The Complaint Meets the Requirements of FRCP 9(b)**

Defendants make a blanket assertion that Relator's claims lack particularity. Defs. Br. at 4. Defendants are wrong.

It is undisputed that the FCA is an anti-fraud statute and that claims thereunder must comply with Fed. R. Civ. P. 9(b), requiring that allegations "state with particularity the circumstances constituting fraud." A fraud claim is sufficiently pleaded "when it includes: (1) the time; (2) the place; (3) the specific content of the fraud; and (4) the identities of the parties participating in the fraud." *Kozhukh*, 64 F. Supp. 2d at 1242. "Rule 9(b)'s heightened pleading standard may be applied less stringently, however, when specific 'factual information [about the fraud] is peculiarly within the defendant's knowledge or control.'" *United States ex rel. Heater v. Holy Cross Hosp., Inc.*, 510 F. Supp. 2d 1027, 1033 (S.D. Fla. 2007) (citing *Hill v. Morehouse Med. Assocs., Inc.*, No. 02-cv-14429, 2003 WL 22019936, at *3 (11th Cir. Aug. 15, 2003)). *Accord*

*United States ex rel. King v. DSE, Inc.*, No. 08-cv-2416-T-23EAJ, 2011 WL 1884012, at *3 (M.D. Fla. May 17, 2011) ("allegations sufficiently allege claims under the False Claims Act by providing adequate factual assurance that, although not knowing every detail of time and amount, the relator alleges more than mere speculation and surmise and presents sufficient evidence of ability and opportunity to acquire reliable and germane knowledge of the wrongs he alleges"). "The analysis of whether there are sufficient indications of reliability that actual claims were submitted is performed on a case by case basis." *United States ex rel. Osheroff v. Tenet Healthcare Corp.*, No. 09-cv-22253, 2012 WL 2871264, at *5 (S.D. Fla. July 12, 2012) (citing *United States ex rel Atkins v. McInteer*, 470 F.3d 1350, 1358 (11th Cir. 2006)).

Here, as demonstrated above, Relator's Complaint provides sufficient detail to apprise Defendants of the misconduct alleged. The Complaint identifies the "who" of the scheme: Dr. Norman, Carol Norman, Norman Professional Association and Dermatology Healthcare. (*See, e.g.*, ¶¶ 8-12). The Complaint identifies the "what" of the scheme: the submission of false claims for more expensive CPT codes when only superficial radiation was performed (*see, e.g.*, ¶¶ 25-31, 36-47, and 57-72), and the submission of claims where radiation was not performed under physician supervision (*see, e.g.*, ¶¶ 23-24, 73-85). The Complaint identifies the "when" of the scheme: from 2012 to the present. (*See, e.g.*, ¶¶ 84-85). Moreover, the Complaint identifies "how" the scheme was accomplished, by setting forth in great detail the background and context necessary to understand the scheme and its implementation. (*See, e.g.*, ¶¶ 57-72, 73-80). Finally, the Complaint also details hundreds of thousands of dollars of fraudulent claims submitted by Defendants during FY 2012 and 2013. (¶¶ 84-85, 90). *See A1 Procurement, LLC v. Hendry Corp.*, No. 11-cv-23582, 2012 WL 6214546, at *8 (S.D. Fla. Dec. 13, 2012) (finding particularity under Fed. R. Civ. P. 9(b) met where relator met presentment requirement with allegations providing "a

reliable indication that claims were actually submitted.”); *Osheroff*, 2012 WL 2871264, at *5 (“Relator may identify specific claims submitted to the government or provide allegations providing ‘a reliable indication that claims were actually submitted.’”) (citation omitted); *United States ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc.*, 906 F. Supp. 2d 1264, 1277 (N.D. Ga. 2012) (relator’s conversations with defendant’s employees provided basis for alleging “plausible fraudulent billing scheme”). *Accord Heater*, 510 F. Supp. 2d at 1036 (holding that all allegations can survive “if at least some of the claims are pled with specificity”) (citing *Clausen*, 290 F.3d at 1312 n.21).

Courts “‘must be careful to harmonize the directives of Fed. R. Civ. P. 9(b) with the broader policy of notice pleading.’” *Graves v. Plaza Med. Centers, Corp.*, No. 10-cv-23382, 2015 WL 11199839, at *2 (S.D. Fla. Apr. 1, 2015), *report and recommendation adopted*, 2015 WL 11199840 (S.D. Fla. July 6, 2015) (citation omitted); *accord Friedlander v. Nims*, 755 F.2d 810 (11th Cir. 1985). The requirements of Rule 9(b) are satisfied if the complaint, as here, “‘provide[s] a reasonable delineation of the underlying acts and transactions allegedly constituting the fraud’” such that the defendants have “‘fair notice of the nature of plaintiff's claim and the grounds upon which it is based.’” *Heater*, 510 F. Supp. 2d at 1033 (citation omitted).[4]

[4] Defendants’ case citations are inapposite and do not say otherwise. *See Hopper v. Solvay Pharms., Inc.*, 588 F. 3d 1318, 1322 (11th Cir. 2009) (*qui tam* relators alleged that “marketing campaign convinced doctors to prescribe [drug] for off-label uses, and claims were ultimately submitted by state health programs and other third parties to the federal government [but] … do not allege that [defendant] Solvay itself submitted any false claims”); *American Dental Assoc. vs. Cigna Corp.*, 605 F. 3d 1283, 1292 (11th Cir. 2010) (RICO case where plaintiffs failed to “allege the manner in which they were misled” or “some kind of deceptive conduct”); *United States ex rel. Atkins v. McInteer*, 345 F. Supp. 2d 1302, 1358 (N.D. Ala. 2004), *aff’d*, 470 F.3d 1359 (11th Cir. 2004) (related summarily concluded that false claims were submitted).

### C. Relator's Claims Are Not Precluded by the Public Disclosure Bar

At the end of Defendants' Rule 9(b) argument, Defendants make a passing assertion that some unspecificied information in the Complaint was "most likely publically available." Defs. Br. at 4. Defendants do not, however, assert that the Complaint should be dismissed on public disclosure grounds, let alone cite any statutory provisions or other legal authority.[5] Thus, Defendants have waived their right to challenge the Complaint on public disclosure grounds.

Putting aside concepts of waiver, presumably, Defendants' references relate to the summary Medicare billing data in the Complaint for the NORMAN GROUP for FY 2012 and 2013. (¶¶ 84, 85). As Defendants are undoubtedly aware, summary billing data for the NORMAN GROUP *and all other Medicare Part B providers throughout the county* is published by the federal government through the Centers for Medicare & Medicaid Services ("CMS"). *See* www.cms.gov. It would be ironic indeed if the Government's posting of raw billing data somehow inoculated the very healthcare providers the Government pursues under the False Claims Act. To be clear, it does not.

The billing data published by the Government contains *nothing* suggesting an "allegation or transaction" of fraud. Rather, the data is raw billing information and merely identifies which

[5] This may be because courts that have considered the Government data in the context of a Rule 9(b) challenge have found it sufficient to meet the pleading requirements of *Clausen*. *United States ex rel. Bingham v. BayCare Health System*, Docket No. 14-cv-73-T-23EAJ, 2015 U.S. Dist. LEXIS 107220, at *12-13 (M.D. Fla. Aug. 14, 2015) ("[T]he relator relies on information from the Centers for Medicare & Medicaid Services to allege that BayCare submitted claims for unlawfully referred Medicare patients. Specifically, the relator alleges for representative years (1) BayCare's revenue from inpatient (and some outpatient) Medicare claims and (2) the names of referring physicians at the Heart Center and the Suncoast Medical Clinic along with each physician's aggregate number of Medicare patient referrals to St. Anthony's Hospital. *Cf. Osheroff at* *6 (Huck, J.) (finding sufficient "indicia of reliability" that claims for payment were submitted where the relator relied … on an exhibit that contained examples of claims.").

providers are billing the Government and for what procedures. The data is devoid of any suggestion of Defendants' schemes. The public disclosure bar has no relevance. Defendants cannot and do not say otherwise. *Accord Cooper v. Blue Cross and Blue Shield of Fla., Inc.,* 19 F.3d 562, 567 (11th Cir. 1994) ("[T]he report does not allege that BCBSF in its capacity as a primary insurer actually engaged in wrongdoing. This report does not constitute a "public disclosure of allegations or transactions" that BCBSF knowingly violated MSP laws."); *Osheroff* at *3-4 ("[A] public disclosure does not trigger the jurisdictional bar unless the publicly disclosed document alleges that the defendant actually engaged in wrongdoing.") (citing *United States ex rel. Compton v. Circle B Enterprises, Inc.,* 2010 WL 942293 at *4 (M.D. Ga. Mar. 11, 2010); *Saldivar,* No. 10-cv-1614-AT, at *15).

The Complaint demonstrates that Relator's own investigation, not the Medicare billing data published by the Government, is the source of the inculpatory evidence against Defendants. As alleged, Defendants' fraudulent billing schemes were uncovered as a result of Relator's personal efforts, which included, among other things, conversations with employees of the NORMAN GROUP, personal inspection of Defendants' facilities and equipment, and personal analysis of the Defendants' professional and business practices. (*See* ¶¶ 59-66). Relator's investigation and analysis was further informed and guided by his own expertise, in that he holds a double board certification in dermatology and dermato-pathology, is personally well-versed in radiation equipment available in the marketplace, and actually conducted and billed for the type of procedures for which the NORMAN GROUP (falsely) billed. "F'Logic and the plain meaning of the Public Disclosure Bar support the conclusion that to the extent a relator does the work to expose a fraud that would otherwise go undetected, Relator's suit cannot be said to be based on disclosed allegations or transactions.'" *Osheroff,* at 3.

## II. THE COMPLAINT ADEQUATELY ALLEGES A CLAIM FOR CONSPIRACY

Defendants argue that Relator has not properly alleged a claim for conspiracy. In so doing, Defendants seek to hide behind the so-called intracorporate conspiracy doctrine to insulate themelves against liability. Those arguments fail.

The Eleventh Circuit has recognized that "Section 3729(a)(3) of the False Claims Act imposes liability on those who 'conspire[] to defraud the government by getting a false or fraudulent claim allowed or paid.'" *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005) (quoting 31 U.S.C. § 3729(a)(3)). "To state a claim under § 3729(a)(3), a relator must show: (1) that the defendant conspired with one or more persons to get a false or fraudulent claim paid by the United States; (2) that one or more of the conspirators performed any act to effect the object of the conspiracy; and (3) that the United States suffered damages as a result of the false or fraudulent claim." *Id.* A conspiracy may be inferred from "a unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement." *Moecker v. Honeywell Int'l, Inc.*, 144 F. Supp. 2d 1291, 1301 (M.D. Fla. 2001) (denying summary judgment on conspriracy claims).

Here, there are four entities involved in the conspiracy, not simply two employees of a single organization. As alleged in the Complaint, the fraudulent billing schemes were executed by Dr. Norman and his wife, Carol Norman, along with two different Florida businesses, Norman Professional Association and Dermatology Healthcare. (¶¶ 8-11, 57-72, 73-80). As alleged, Dr. Norman managed, controlled and owned the Norman Professional Association. (¶ 81). Together, Dr. Norman and Carol Norman managed, controlled and owned Dermatology Healthcare. (¶ 82). Both Dr. Norman and Carol Norman derived significant personal financial benefit and attained significant wealth as a result of the false claims submitted by the NORMAN GROUP to government healthcare programs, including Medicare. (¶ 83). As alleged, Dr. Norman and Carol

Norman each took affirmative and overt steps to implement the fraudulent billings schemes. Among other things, Dr. Norman and Carol Norman were both "responsible to supervise and oversee the submission of all billing claims to Medicare" – *i.e.*, each tooks steps to preprare, process and submit the false records and false claims to the Government, and thus, each of these Defendants approved the false claims submitted. (¶¶ 81-82). Given that these Defendants were married, cooperatively shared in the operation of the schemes and financially shared in the proceeds of the schemes, it can be inferred for pleading purposes that the Defendants engaged in a conspiracy to accomplish those schemes. Defendants' own case citation in accord. *See JES Props., Inc. v. USA Equestrian, Inc.*, 253 F. Supp. 2d 1273, 1279-80 (M.D. Fla. 2003) (recognizing that "only in rare cases" can a plaintiff establish a conspiracy by showing an express agreement: "Most conspiracies are inferred from the behavior of the alleged conspirators."); *United States v. Silvestri*, 409 F.3d 1311, 1328 (11th Cir. 2005) ("The existence of an agreement may be proven by circumstantial evidence, including "inferences from the conduct of the alleged participants or from circumstantial evidence of a scheme.").[6]

The intracorporate conspiracy doctrine can bar "conspiracy claims against corporate or government actors accused of conspiring together within an organization." *United States ex rel. Gacek v. Premier Med. Mgmt., Inc.*, No. 14-cv-0342-WS-B, 2017 WL 2838179, at *12 (S.D. Ala. June 30, 2017) (citing *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir.

[6] Defendants' reliance on *Dickerson v. Alachua County Com'n*, 200 F.3d 761 (11th Cir. 2000) is misplaced. There, an inmate sued a county jail and several of its employees for alledgedly interfering with his civil rights. On appeal, following trial, the Eleventh Circuit reversed the jury verdict in favor of the plaintiff. In discussing plaintiff's claims, the court held that "the County and its employees are considered a single legal entity" which "would not be capable of conspiring with itself." *Id.* at 768. Here, by contrast, two of the defendants are Florida businesses and the other two defendants are individuals that control one or both of those businesses. Defendants' other case citations are also uninformative at this early stage. *See, e.g., United States ex rel. Bame v. Breathe Easy Pulmonary Servs., Inc.*, 597 F. Supp. 2d 1280, 1289, (M.D. Fla. 2009) (unlike here, this decision was rendered on summary judgment).

2000)). However, Defendants overlook that the Eleventh Circuit has "'long recognized an exception to the applicability of the intracorporate conspiracy doctrine for intracorporate criminal conspiracies arising under 18 U.S.C. § 371 of the federal criminal code.'" *Id.* (quoting *McAndrew*, 206 F.3d at 1038).

The provisions of 18 U.S.C. § 371 prohibit two or more persons from conspiring to defraud the United States, exactly what is alleged here. The Eleventh Circuit's longstanding exception to the intracorporate conspiracy doctrine applies to "conspiracies that also would constitute crimes, reasoning that public policy and legislative history 'counsel in favor of a consistent application of the criminal conspiracy exception to the intracorporate conspiracy doctrine ***regardless of whether the criminal conspiracy arises under the federal criminal or civil code***.'" *Id.* (quoting *McAndrew*, 206 F.3d at 1040) (emphasis added). As the Eleveth Circuit has explained, "the doctrine 'was never intended nor used to shield conspiratorial conduct that was criminal in nature,' and 'there is no reason to differentiate between the criminal and civil conspiracy statutes' where the underlying conspiratorial conduct is the same." *Id.* (quoting *McAndrew*, 206 F.3d at 1040-41).

Thus, for example, in *United States ex rel. Harris v. Lockheed Martin Corp.*, 905 F. Supp. 2d 1343 (N.D. Ga., 2012), relator filed a *qui tam* action against an airplane manufacturer alleging that it violated the FCA by fraudulently billing the United States military for parts and labor. There, the court found that the relator alleged that "Lockheed Martin conspired through its officers, agents, and employees to defraud the United States." *Id.* at 1354. The court held that Relator's "allegations plainly describe conduct that, if true, would be violative of both the civil liability provisions of 31 U.S.C. § 3729(a) and the criminal fraud conspiracy provisions of 18 U.S.C. § 371. *Id.* at 1354-55 ("[T]he intracorporate 'doctrine cannot shield the same conspiracy, alleging the same criminal wrongdoing, from civil liability.'") (quoting *McAndrew*, 206 F.3d at 1034).

Whether Relator can ultimately prove his claims on a full record following discovery is premature and not relevant on a motion to dismiss.

## III. RELATOR STATES VIABLE CLAIMS UNDER THE FFCA

Finally, Defendants argue that the FFCA claims suffer from the same pleading infirmities as the FCA claims. For the reasons discussed above, this argument must also fail.

Because the Florida False Claims Act is modeled after the Federal False Claims Act, courts analyze FFCA claims using the same general standards. *Premier Hospitalists PL*, 2017 WL 119773, at *4 (citing *United States v. Cypress Health Sys. Fla., Inc.*, No. 09-cv-137-SPM-GRJ, 2012 WL 467894, at *1 (N.D. Fla. Feb. 14, 2012)). Accordingly, "[t]he Florida False Claims Act claims need not be separately discussed; the state statute is nearly identical to the FCA, and the analysis of the FCA claims applies equally to the Florida False Claims Act claims." *United States v. Adventist Health Sys./Sunbelt, Inc.*, No. 10-cv-1062-ORL-28, 2012 WL 3105586, at *2 (M.D. Fla. July 30, 2012). *Accord United States v. Inst. of Cardiovascular Excellence, PLLC*, No. 11-cv-406-OC-37TBS, 2015 WL 12866448, at *2 n.4 (M.D. Fla. Nov. 5, 2015).

As demonstrated above, Relator has plainly stated claims for relief for violations of the FCA, and thus has sufficiently pleaded claims under the FFCA. While Defendants may wish to attack the veracity of Relator's allegations, such efforts are premature at this stage. Defendants will have ample opportunity in this litigation to challenge Relator's allegations on a fully developed record following discovery, whether at summary judgment or trial. For now, as courts in this District and others within the Eleventh Circuit have repeatedly found, even if "'[t]he Amended Complaint is not perfect … perfection is not the applicable pleading standard.'" *Hospitalists PL*, 2017 WL 119773, at *8 (quoting *Crumb*, 2016 WL 4480690, at *28). "The theories of False Claims Act liability, and the factual allegations upon which they rest, are set forth in ample detail to alert the defendants in this case to the precise misconduct with which they are

charged, all with sufficient indicia of reliability to protect defendants against spurious charges.'" *Id.*

**CONCLUSION**

For all of the reasons discussed above, Defendants' motion should be denied.

In the event the Court dismisses one or more claims, Relator respectfully requests that such dismissal be without prejudice, and that Relator be granted leave to file an amended complaint within these proceedings. *Accord United States ex rel. Sharpe v. Americare Ambulance*, No. 13-cv-1171-T-33AEP, 2017 WL 2840574, at *5 (M.D. Fla. July 3, 2017) ("Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, '[t]he court should freely give leave [to amend] when justice so requires.'"); *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001).

Dated: July 13, 2017

Respectfully submitted,

/s/ *Lawrence S. Klitzman*
Lawrence S. Klitzman
(Florida Bar No. 312878)
KLITZMAN LAW GROUP, PLLC
1391 Sawgrass Corporate Parkway
Sunrise, FL 33323
Tel.: (954) 384-4421
Fax: (954) 389-9579
lsk@klitzlaw.com

-and-

Daniel Miller
Lane L. Vines
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Tel.: (215) 875-3000
Fax: (215) 875-4604

*Attorneys for Plaintiff-Relator*

**CERTIFICATE OF SERVICE**

I hereby certify that I caused a true and correct copy of the foregoing Plaintiff-Relator's Brief in Opposition to Defendants' Motion to Dismiss the First Amended Complaint to be electronically filed with the Clerk of Court using the CM/ECF system, which will send electronic filing to all counsel of record.

/s/ *Lawrence S. Klitzman*
Lawrence S. Klitzman