UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES and
STATE OF FLORIDA *ex rel.*
THEODORE A. SCHIFF,

    Plaintiffs,

v.                                              CASE NO. 8:15-cv-1506-T-23AEP

ROBERT A. NORMAN, et al.,

    Defendants.
_____/

## **ORDER**

A dermatologist in South Florida, relator Theodore Schiff allegedly discovered through public databases, anonymous calls to the defendants' offices, and stakeouts of the defendants' operations that the defendants fraudulently billed Medicare for radiation therapy.[1] Alleging that the defendants submitted, or caused the submission of, false claims and that the defendants conspired to violate the False Claims Act, the relator sues (Doc. 20) two dermatology practices (Robert A. Norman, D.O., PA and Dermatology Healthcare, L.L.C.), the dermatologist who owns the practices (Robert Norman), and the dermatologist's wife (Carol Norman), who allegedly supervises billing. The defendants move (Doc. 27) to dismiss the complaint under Rules 9(b) and 12(b)(6), Federal Rules of Civil Procedure.

---

[1] *See, e.g.*, Doc. 20 at ¶¶ 36, 37, 38, 39, 40, 41, 42, 43, 59, 64, 65, 66, 73, 74, 76, 79.

**BACKGROUND**

The relator alleges two fraud schemes. First, Medicare allegedly paid some or all of the defendants for complex radiation treatments not provided by any defendant. According to the relator, Medicare reimburses about $20 for a "superficial" radiation treatment, which requires a "relatively inexpensive" x-ray machine that emits no more than a hundred kilovolts. (Doc. 20 at ¶¶ 25 and 32–33) A provider allegedly bills Medicare for a superficial-radiation treatment under CPT code 77401.[2] (Doc. 20 at ¶ 27) In contrast, Medicare reimburses up to $250 for a "complex" radiation treatment, which the provider purportedly bills under CPT codes 77402, 77407, or 77412. (Doc. 20 at ¶¶ 28–30 and 32) The relator alleges that a complex treatment requires a linear accelerator, which reportedly costs $3 million. (Doc. 20 at ¶¶ 31 and 33) Despite allegedly owning no linear accelerator, the defendants billed Medicare for complex treatments. (Doc. 20 at ¶¶ 64–67)

Second, the relator alleges that some or all of the defendants billed Medicare for radiation therapy provided by a non-physician. (Doc. 20 at ¶ 74) According to the relator, a Medicare regulation requires a physician to supervise radiation therapy. (Doc. 20 at ¶ 22) An unnamed and allegedly unsupervised "mobile technician" purportedly provides the radiation therapy for which some or all of the defendants

---

[2] Medicare determines the reimbursement based on the "Current Procedural Terminology" (CPT) code, which the provider selects and which must accurately describe the procedure. (Doc. 20 at 26)

bill Medicare.  (Doc. 20 at ¶¶ 74–79)  The relator concludes that a claim resulting from this unsupervised-provider scheme constitutes a false claim.  (Doc. 20 at ¶ 80)

## DISCUSSION

### I. The failure to distinguish between defendants

Although each count suffers from several defects, the failure to distinguish between defendants pervades all three claims in the complaint.[3]  If a plaintiff sues more than one defendant for fraud, the plaintiff cannot "lump together" several defendants and allege generally the defendants' participation in a fraud scheme. *Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1316–17 (11th Cir. 2007) (citing *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1380–82 (11th Cir. 1997)).  As *Brooks* explains, a defendant cannot identify and respond to a fraud claim if the complaint fails to detail each defendant's participation in the fraud. 116 F.3d at 1380.  To satisfy Rule 9(b)'s particularity requirement, the plaintiff must allege specifically a fraudulent act by each defendant.  *Ambrosia*, 482 F.3d at 1317 (citing *Brooks*, 116 F.3d at 1381); *see also Hopper v. Solvay Pharm., Inc.*, 588 F.3d 1318, 1324 (11th Cir. 2009) (explaining that Rule 9(b) requires a relator to allege specific facts "as to [the] time, place, and substance" of a defendant's alleged fraud) (internal quotation omitted).  In this action, the relator impermissibly groups the four defendants.  (Doc. 20 at ¶ 12 ("Norman, Carol, Norman PA[,] and [Dermatology

---

[3] Also, each count in the complaint impermissibly incorporates by reference all of the preceding paragraphs in the complaint. *See Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015) (describing a "shotgun complaint").

- 3 -

Healthcare] are collectively and interchangeably referred to as Norman Group"))
Because the complaint fails to describe with particularity each defendant's
participation in the alleged fraud, the complaint violates Rule 9(b).[4]

**A. The unsupervised-provider scheme**

In addition to impermissibly grouping the defendants, the allegations about the unsupervised-provider scheme suffer from at least three other defects. First, the relator conspicuously fails to exclude the prospect that a physician supervised the radiation therapy. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) (holding that a complaint must allege facts sufficient to exclude the prospect of lawful conduct). Paragraph 74 alleges that "Norman Group sends mobile technicians across the state" and that the "technicians are not physicians." Even if a technician administers the radiation therapy, a physician might stand next to the technician during the procedure, but no well-pleaded facts in the complaint exclude that possibility. Paragraph 79 alleges: "Based upon communications with the NORMAN GROUP office personnel as well as personnel at several Facilities, Relator alleges that all radiation treatments [sic] services rendered at the Facilities by use of the mobile van are rendered without direct physician supervision." As the defendants

---

[4] Also, count one impermissibly asserts two claims. *See Kennedy v. Bell South Tel., Inc.*, 546 Fed.Appx. 817 (11th Cir. Oct. 18, 2013) (explaining that a plaintiff must include no more than one claim per count). Additionally, the relator attempts in count one to sue under Section 3729(a)(2), but that provision involves damages, not liability. And the complaint fails to allege specific facts that show the "mak[ing, use[], or caus[ing] to be made or used a false record or statement material to a false or fraudulent claim" (the factual allegations necessary to state a claim under Section 3729(a)(1)(B)).

- 4 -

observe, the relator fails to identify the details of the "communications" and fails to allege specific facts showing that no physician supervised the radiation therapy.

Second, the False Claims Act subjects a defendant to liability only if the defendant's claim for reimbursement misrepresents or omits a material fact, but the relator fails to allege with particularity facts that show the United States considers a violation of the physician-supervision requirement material. In *Universal Health Services, Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989 (2016), several allegedly unlicensed and unsupervised providers treated a patient, and the defendant purportedly billed Medicaid under a CPT code reserved for a licensed and supervised provider. Because the False Claims Act punishes fraud — not "garden-variety breaches of contract or regulatory violations" — *Escobar* holds that liability under the False Claims Act requires proof that the United States would deny reimbursement if the United States were to uncover the defendant's violation of a "particular statutory, regulatory, or contractual requirement." 136 S. Ct. at 2003. And *Escobar* explains that a plaintiff must allege with particularity "facts to support allegations of materiality." 136 S. Ct. at 2004 n.6. In this action, the relator alleges no facts to show or permit an inference that the United States routinely refuses to reimburse a defendant for radiation therapy not supervised by a physician.

Third, the relator fails to identify with particularity (or even with generality) a false claim "actually submitted" under the unsupervised-provider scheme. In *United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301 (11th Cir. 2002), a relator

employed by the defendant's competitor alleged that the defendant billed for medically unnecessary tests, but the relator failed to allege any details about a fraudulent claim (for example, the day and the amount of a claim). The district court in *Clausen* dismissed the action because the complaint relied on nothing more than speculation that the defendant submitted a claim for reimbursement. Affirming the dismissal, *Clausen* holds that a relator must allege with particularity facts that show the "actual submission" of a false claim. 290 F.3d at 1311–12 ("Rule 9(b) . . . does not permit a False Claims Act plaintiff merely to describe a private scheme in detail but then to allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted, or should have been submitted to the Government."). In this action, the relator's complaint alleges no facts to show that a defendant "actually" billed Medicare for radiation therapy not supervised by a physician. For example, the relator neither alleges the day and amount of a false claim nor appends to the complaint a claim submitted to the United States. Because the complaint fails to allege specific and well-pleaded facts showing that a defendant "actually submitted" a false claim, the allegations about the unsupervised-provider scheme violate Rule 9(b).

**B. The Florida False Claims Act**

Although the complaint alleges that some or all of the defendants billed Medicare[5] (Doc. 20 at ¶ 84), the complaint says nothing about a claim submitted to,

---

[5] The United States pays a Medicare claim.

or paid by, the State of Florida (for example, a claim under Medicaid). Because the complaint fails to identify with particularity a false claim submitted to, or paid by, the State of Florida, the relator fails to state a claim under the Florida False Claims Act. *See Clausen*, 290 F.3d at 1310–12 (holding that a relator must allege with particularity facts that show the "actual submission of claims").

**II. The conspiracy claim**

Three conclusory and unsubstantiated paragraphs (Doc. 20 at ¶¶ 92–94) allege a conspiracy to submit a false or fraudulent claim, and the defendants request dismissal for several reasons. First, the defendants argue that the "intra-corporate conspiracy doctrine" bars the claim. (Doc. 27 at 7) Ordinarily a corporation and a corporate principal, agent, or employee acting within the scope of employment cannot conspire because a conspiracy requires an agreement between at least two people, and the conduct of a principal, agent, or employee is attributable to the corporation. *Dickerson v. Alachua County Com'n*, 200 F.3d 761, 767–70 (11th Cir. 2000) ("[I]t is not possible for a single legal entity consisting of the corporation and its agents to conspire with itself."). But *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031 (11th Cir. 2000) (en banc), excepts from the "intra-corporate conspiracy" bar a civil claim that alleges a conspiracy to defraud the United States or to commit an offense against the United States. Because the False Claims Act punishes fraud against the United States, several decisions find the "intra-corporate conspiracy" bar inapplicable to an alleged conspiracy between a corporation and an employee to

submit a false or fraudulent claim to the United States. *See United States ex rel. Gacek v. Premier Med. Mgmt., Inc.*, 2017 WL 2838179 at *11–*12 (S.D. Ala. June 30, 2017) (Steele, J.); *United States ex rel. Beattie v. Comsat Corp.*, 2001 WL 35992080 at *3 (M.D. Fla. Apr. 18, 2001) (Bucklew, J.). *But see United States v. Summit Healthcare Ass'n, Inc.*, 2011 WL 814898 at *6–*7 (D. Ariz. Mar. 3, 2011) (Martone, J.); *Pencheng Si v. Laogai Res. Found.*, 71 F.Supp.3d 73, 98 (D.D.C. 2014) (Jackson, J.); *United States ex rel. Lupo v. Quality Assur. Servs., Inc.*, 242 F.Supp.3d 1020, 1027 (S.D. Cal. 2017) (Miller, J.) (collecting decisions).

Although not precluded by the "intra-corporate conspiracy" bar, the claim violates Rule 9(b), which requires the relator to allege with particularity facts that show an agreement to submit a false or fraudulent claim to the United States. *Corsello v. Lincare*, 428 F.3d 1008, 1014 (11th Cir. 2005) (affirming the dismissal of a conspiracy claim for violating Rule 9(b)). Although the relator correctly observes that a conspiracy "[can be] inferred from the behavior of the alleged conspirators," the conspiracy claim appears to rely exclusively on the fact of Robert and Carol's marriage.[6] (Doc. 32 at 20) Absent other facts that show an express or implied agreement to defraud the United States, a marriage falls (far) short of satisfying Rule 9(b)'s particularity requirement.

---

[6] Also, the relator argues that Carol and Robert "each took affirmative and overt steps to" defraud the United States. (Doc. 32 at 20) To support that argument, the relator cites the allegation that Robert and Carol "were responsible to supervise and oversee the submission" of Medicare claims. But a defendant's alleged duty to supervise Medicare billing is neither an "affirmative" nor an "overt" step.

## CONCLUSION

Lacking an employment relation or any other apparent connection to the defendants, the relator admittedly gleaned most of the information in the complaint through public databases, anonymous calls, and stakeouts. The relator's observations from afar yielded an imprecise complaint replete with conclusory allegations but sparse on details. For the reasons explained above, the motion (Doc. 27) to dismiss the complaint is **GRANTED**, and the complaint is **DISMISSED**. No later than **JANUARY 22, 2018**, the relator may amend the complaint. If a count in the second amended complaint fails to state a claim, the relator may not amend the complaint a third time absent an extraordinary circumstance. The motion (Doc. 35) to "stay consideration of the motion to dismiss" until the United States intervenes at some unspecified time is **DENIED AS MOOT**.[7]

ORDERED in Tampa, Florida, on January 2, 2018.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

---

[7] On August 10, 2017, the United States moved (Doc. 33) to intervene. An August 21, 2017 order (Doc. 34) denies without prejudice the United States's motion because the United States failed to append a proposed amended complaint to the motion. Four months after the denial, no renewed motion to intervene appears.