Exhibit 1

Klitzman Declaration

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,
and STATE OF FLORIDA,
ex rel. THEODORE A. SCHIFF, M.D.,

Plaintiffs,

v. Case No. 8:15-cv-1506-T-23AEP

ROBERT A. NORMAN, D.O., et al.,

Defendants.
______________________________________/

**DECLARATION OF LAWRENCE S. KLITZMAN**

I, Lawrence S. Klitzman, under penalty of perjury under the laws of the United States, declare that I have personal knowledge of the information contained in this declaration, and that the following is true and correct to the best of that knowledge:

Background

1. I am an attorney duly admitted to practice before this Court.

2. I am the principal of Klitzman Law Group, PLLC ("Klitzman Firm") founded in 1983. I graduated from the University of Miami School of Law in 1980 and obtained a Masters of Law in Taxation, also from the University of Miami in 1981. I have been admitted to practice law in Florida since 1980 and in New Jersey since 1983. My undergraduate education was at Brandeis University where I obtained a B.S. in Economics in 1977. I was "of counsel" to the law firm of Gars, Dixon & Shapiro in Miami, Florida from 1983 through 1991. My practice includes both complex commercial civil litigation and transactional work. Among the significant commercial litigation cases I have handled are consumer fraud class actions against financial institutions and Fortune 500 companies resulting in multi-million judgments and recoveries. See, *Varsolona* v. *Breen Captial Services Corp.,* 853 A. 2d 865 (N.J. 2004) and *BellSouth Mobility LLC* v. *Christopher* 819 So. 2d 171, Florida (4th DCA) 2002. Since the filing of this action, I have filed multiple other False Claims Act cases involving health care regulatory fraud. One such case involving alleged violations of several of the regulatory (CPT) codes at issue in this case was recently settled after the entry of summary judgment with a recover of $5.45 million in cash plus a parcel of real estate. See, *United States of America ex. rel. Theodore A. Schiff, M.D. v. Gary L. Marder, D.O., et. al.* U.S.D.C. (Southern District -Miami) Case No. 1:13-cv-24503-KMM. The majority of my transactional practice involves the representation of physicians and physicians' practices including on health care regulatory matters including the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b) (the "AKS"), and Stark Law, 42 U.S.C. § 1395nn which were prominent issues in this case.

3. The Klitzman Firm together with Berger and Montague, P.C. (the "Berger Firm" or "Co-

Counsel") represent Relator Theodore A. Schiff ("Relator") in the above-captioned False Claims Act litigation. The pursuit of *qui tam* claims under the False Claims Act is high complexity litigation. This case in particular required a level of sophistication exceeding that of nearly any other case upon which I have worked.

4. Each of the above-captioned defendants have reached settlements with the United States and Relator. Pursuant to 31 U.S.C. §3730(d) and its Florida FCA analog, it is mandatory that defendants pay all reasonable attorney fees, costs, and expenses incurred by Relator and his counsel.

5. According to the terms of the consent final judgment ("Consent Final Judgment") to which Defendants Robert A. Norman, D.O. (Norman), Carol Norman (Carol Norman), Robert A. Norman, D.O., P.A. (Norman PA), and Dermatology Healthcare, LLC (Dermatology Healthcare) ("Dermatology Healthcare", together with Norman, Carol Norman, and Norman PA the "Norman Defendants") have stipulated and agreed are jointly and severally liable for the payment of Relator's reasonable expenses, attorneys' fees and costs ("Relator's Fees") under 31 U.S.C. § 3730(d). Attached to this Declaration as Ex. 1. is a copy of the Consent Final Judgment.

6. Prior to the filing of the instant petition for fees, I, together with my Co-Counsel attempted to negotiate a resolution of the attorney fee dispute with opposing counsel for a period of months. Those attempts failed.

**The Klitzman Firm's Timekeeping and Expense Systems**

7. With respect to this case, each member of the Klitzman Firm prepared daily time records detailing their activities in measurements of one sixth of an hour. These records were generated over the entire history of this case, and were used to compile a statement which shows all time expended, by person and by date, along with a brief description of the services provided. A separate record of all expenses was also kept.

8. As of July 18, 2018, the total lodestar incurred by the Klitzman Firm amounted to $76,083.26, and the total costs and expenses were $2,594.79.

9. Exhibit 2 to this Declaration contains the time records described above which indicate the date a particular service relating to the case was performed, the initials of the attorney or law clerk who worked the particular service, a description of the service provided and the amount of time expended.

10. Exhibit 3 to this Declaration is a chart entitled "Recapitulation" that summarizes the total number of hours worked on this case by each person in the Klitzman Firm, states the hourly rate for each person, and provides the total charge for each persons' services as well as the total for all fees charged. The rates are what we charge our clients for matters of this nature.

11. Exhibit 4 to this Declaration details the litigation costs advanced by the Klitzman Firm in litigating this case. These expenses are reasonable out-of-pocket expenses of the same type and charged at the same rate we charge for matters of this nature.

## The Work Performed Was Reasonable

12. The False Claims Act as well as the Consent Final Judgment provide that the Norman Defendants pay "reasonable attorney's fees, expenses and costs." 31 U.S.C. §3130(d). Below I briefly describe the work performed by the Klitzman Firm in pursuit of this case.

13. Before doing so, it should be noted that this was a contingent fee case, i.e., Counsel were incentivized to only perform work which was necessary to advance the case. There certainly was no incentive to "overbill" the case.

14. Counsel's work on this case began more than three and one-half years ago, several months before the filing of the original complaint in June, 2015, and continues through the instant motion. During the pre-complaint filing period, the Klitzman Firm was actively doing extensive legal research on the healthcare regulatory, coding, billing and other issues involved in this case, and working closely with the investigation team.

15. Due to an ongoing professional relationship with co-counsel Daniel Miller of the Berger Firm, including in other False Claims Act litigation involving alleged violations of many of the same regulatory procedures involved in the instant case, and the costs and risks associated with undertaking a litigation of this nature, the Klitzman Firm decided it would be beneficial to again co-counsel this case with the Berger Firm. The Berger Firm participated side by side with the Klitzman Firm in every aspect of these proceedings and was an invaluable resource.

16. During an approximately three and (3½) one-half year period of involvement, Counsel investigated Relator's claims, drafted and filed the original complaint and the amended complaint, interacted extensively with the Government, supported the Government's settlement efforts at nearly every turn, and engaged in myriad communications with the defendants.

17. As noted above, Counsel communicated extensively with the Government during the investigation stage as well as during litigation and the settlement part of this case, via e-mail, conference calls and by way of appearance at the Government's offices for the Relator interview. During protracted settlement negotiations, Counsel and the Government engaged in frequent, back and forth communications. At each stage of the litigation, these communications were necessary to advance and settle this *qui tarn* case brought by Relator on behalf of the Government.

18. This was a complex case that required close coordination between the Klitzman Firm and the Berger Firm. There are many time entries referencing calls, emails or meetings among Counsel. Further, this matter required the assistance and coordination of a number of different attorneys at the Klitzman and Berger Firms. There were no directions for how to proceed in pursuing this rather unusual case. This necessitated Counsel conferring frequently in order to develop, strategize and plan.

## Counsel's Exercise of Billing Judgment

19. As noted above, the total lodestar for the Klitzman Firm as of July 18, 2018 was 76.083.26. Each time entry for each person who worked on this matter was individually reviewed.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 15, 2018

Lawrence S. Klitzman

Exhibit 1 to Klitzman Declaration

Consent Final Order

# SETTLEMENT AGREEMENT

This Settlement Agreement (Agreement) is entered into among the following parties: the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General (OIG-HHS) of the Department of Health and Human Services (HHS) (collectively, United States); the State of Florida, acting through the Office of the Attorney General, Department of Legal Affairs (Florida); Robert A. Norman, D.O. (Norman), Carol Norman (Carol Norman), Robert A. Norman, D.O., P.A. (Norman PA), and Dermatology Healthcare, LLC (Dermatology Healthcare) (collectively, Defendants); and Theodore A. Schiff, M.D. (Relator) (collectively, Parties), all through their authorized representatives.

## RECITALS

A. Norman PA and Dermatology Healthcare are headquartered at 8002 Gunn Hwy in Tampa, Florida and provide dermatological and radiological services to Federal and State health care beneficiaries and other patients in Hillsborough County, Florida and the surrounding areas.

B. Norman is sole owner and chief executive officer of Norman PA and co-owner of Dermatology Healthcare. He is a dermatologist licensed to practice medicine in the State of Florida with medical license number OS4442.

C. Carol Norman is chief financial officer of Dermatology Healthcare. Carol Norman and Norman are the sole owners of Dermatology Healthcare.

D. On June 25, 2015, the Relator filed a *qui tam* action in the United States District Court for the District of the Middle District of Florida captioned *United States and the State of Florida ex rel. Theodore A. Schiff, M.D. v. Robert A. Norman, D.O., et al.*, Case No. 8:15-cv-1506-T-23AEP, pursuant to the *qui tam* provisions of the False Claims Act (FCA), 31 U.S.C. § 3730(b), and the Florida False Claims Act (Florida FCA), Fla. Stat. § 68.082 *et seq.* (the Civil Action). In that action, the Relator alleged that, during the time-period covered by his

Complaint, Defendants knowingly submitted false and fraudulent claims related to superficial radiation therapy to Medicare, Medicaid, and other Federal and State health care beneficiaries.

E. The United States and Florida contend that Defendants submitted and caused to be submitted claims for payment to the Medicare Program, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 (Medicare), and the State's Medicaid Program, 42 U.S.C., Chapter 7 Subchapter XIX, Florida Statutes Chapter 409 (Medicaid). The United States and Florida further contend that they have certain civil claims against Defendants for the submission of false and fraudulent claims to the Medicare and Medicaid programs during the time period from January 1, 2011 through December 31, 2016 (Relevant Period). In particular, the United States and Florida contend that, during the Relevant Period, Defendants knowingly presented and caused to be presented false and fraudulent claims for superficial radiation therapy. Specifically, the United States and Florida contend, *inter alia*, that Defendants (1) failed to adequately supervise the administration of superficial radiation therapy to Medicare beneficiaries, (2) upcoded Current Procedural Terminology Codes (CPT Codes) related to superficial radiation and associated procedures, and (3) overutilized CPT Codes related to radiation simulations. This conduct is referred to below as the "Covered Conduct."

F. The Defendants expressly deny the allegations in the Complaint, as amended, and the contentions of the United States and Florida, and vigorously assert that they engaged in no wrongful conduct, and this Settlement Agreement is not an admission of facts or liability. Moreover, Defendants assert that the Settlement Agreement, its execution, or the performance of any obligations under this Settlement Agreement, including any payment, or the fact that the settlement are not intended to be, or shall be understood as an admission of liability or wrongful conduct by Defendants.

G. This Agreement is neither an admission of liability by Defendants nor a concession by the United States or Florida that their claims are not well founded.

H. The Relator claims entitlement under 31 U.S.C. § 3730(d) and Fla. Stat. Ann. § 68.085 to a share of the proceeds of this Agreement, and to reasonable attorneys' fees, expenses, and costs.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

TERMS AND CONDITIONS

1. Defendants, jointly and severally, shall pay $3,672,937.83 to the United States (Federal Settlement Amount) and $327,062.17 to Florida (State Settlement Amount) for a total sum of $4,000,000 (Total Settlement Amount) of which $4,000,000 constitutes restitution. The Total Settlement Amount shall be paid as follows:

a. Within thirty (30) days of the Effective Date of this Agreement, Defendants will make an initial payment to the United States in the sum of six hundred seventy two thousand nine hundred thirty seven dollars and eighty three cents ($672,937.83) (Initial Federal Payment) and a payment to Florida in the sum of three hundred twenty seven thousand sixty two dollars and seventeen cents ($327,062.17).

b. Defendants will pay the balance of the Federal Settlement Amount totaling $3,000,000 (Remaining Federal Settlement Amount) through installment payments (Federal Installment Payments) according to the schedule attached hereto as Exhibit 1. Interest shall accrue on the Remaining Federal Settlement Amount beginning on the first day of the calendar month following the Initial Federal Payment at a rate of 1.75% per annum. Collectively, the

Federal Settlement Amount and interest received by the United States shall be referred to as the "Total Federal Settlement Proceeds."

c. Defendants shall pay the Federal Settlement Amount to the United States by electronic funds transfer pursuant to written instructions to be provided to Defendants by the United States Attorney's Office for the Middle District of Florida. Defendants shall pay the State Settlement Amount to Florida by electronic funds transfer pursuant to written instructions to be provided to Defendants by the Florida Attorney General's Medicaid Fraud Control Unit.

d. If Defendants fail to make any of the payments set forth in this Agreement at the specified time, upon written notice to Defendants of such default, Defendants shall have 30 days to cure the default. If the default is not cured within the 30-day period, the remaining unpaid portion of the Total Settlement Amount shall become accelerated and immediately due and payable, with interest at a simple rate of 1.75% per annum from the Effective Date of this Agreement to the date of default, and at a simple rate of 12% per annum, compounded annually from the date of default until payment of the remaining unpaid Total Settlement Amount. Defendants also stipulate, agree, and consent to entry of a Consent Judgment against them jointly and severally, a copy of which is attached as Exhibit 2 (Consent Judgment).

e. In the event of a default that is not cured within 30 days of notice described in 1.(d) above, the United States and Florida, at their sole discretion, may exercise any of the following options, either individually or in concert: (i) pursue any and all actions for collection as it may choose, including, without limitation, filing an action for specific performance of this Agreement; (ii) offset the remaining unpaid balance of the Total Federal Settlement Proceeds or State Settlement Amount from any amounts due and owing to Defendants by any department, agency, or agent of the United States or Florida; and (iii) file the Consent Judgment in the United States District Court for the Middle District of Florida.

Defendants agree not to contest any collection actions undertaken by the United States and/or Florida pursuant to this Paragraph, and to pay the United States and/or Florida all reasonable costs incurred in any such collection action, including reasonable attorney's fees and expenses.

f. Notwithstanding the foregoing, in the event of a default that is not cured within 30 days of notice under paragraph (d) above, OIG-HHS may exclude Defendants, and its current or former owners, officers or directors, from participating in all Federal health care programs until Defendants pays the Total Federal Settlement Proceeds and reasonable costs as set forth above. OIG-HHS will provide written notice of any such exclusion to Defendants, and/or to its current or former owners, officers or directors. Defendants and its current or former owners, officers or directors waive any further notice of the exclusion under 42 U.S.C. § 1320a-7(b)(7), and agree not to contest such exclusion either administratively or in any state or Federal court. Reinstatement to program participation is not automatic. If, at the end of the period of exclusion, Defendants and/or its current or former owners, officers or directors wish to apply for reinstatement, they must submit a written request for reinstatement to OIG-HHS in accordance with the provisions of 42 C.F.R. §§ 1001.3001-.3005. Defendants and its current or former owners, officers, or directors will not be reinstated unless and until OIG-HHS approves such request for reinstatement.

2. If Norman, Carol Norman, or both (1) sell all or any portion of their interest in Dermatology Healthcare or Norman PA, (2) take any action which results in the sale of all or substantially all of Norman PA's or Dermatology Healthcare' assets, (3) merge, consolidate, or reorganize the shares or membership units of Dermatology Healthcare or Norman PA, or (4) take any action which results in the pledge, mortgage, encumbrance, or hypothecation of all or any portion of the assets owned by Dermatology Healthcare or Norman PA outside the ordinary course of business, they shall pay the proceeds of the sale(s) or financing, minus any

commercially reasonable costs and expenses, up to the Total Federal Settlement Proceeds and unpaid State Settlement Amount to the United States and Florida as soon as reasonable, but not later than three (3) business days after receiving the proceeds. Payment(s) of the proceeds shall be made in the following order: (a) the Federal Installment Payments in reverse chronological order; and (b) the Initial Federal Payment and State Settlement Amount on a *pro rata* basis. Failure to turn over the sale or financing proceeds within three (3) business days is an event of default as set forth in Paragraph 1.d. In the event of default, the United States and/or Florida, in their sole discretion, may exercise the remedies set forth in Paragraph 1.e.

3. Contingent upon the United States receiving the Federal Settlement Amount from Defendants, the United States agrees that it shall pay the following sums to the Relator by electronic funds transfer within the time-frames specified below:

a. 23% of the Initial Federal Payment as soon as reasonably feasible after the United States' receipt of such payment.

b. 23% of each Federal Installment Payment, plus interest, made by Defendants as soon as reasonably feasible after the United States' receipt of such payments.

c. 23% of any funds subsequently received by the United States from any Defendant in the event of default or proceedings described in paragraph 24(b) below.

4. Contingent upon Florida receiving the State Settlement Amount from Defendants, Florida agrees that it shall pay the following sums to the Relator within the time-frames specified below:

a. 25% of the State Settlement Amount as soon as reasonably feasible after Florida's receipt of such payment, under the conditions addressed via a side letter in this Civil Action.

b. 25% of any funds received by Florida from any Defendant in the event of default or proceedings described in paragraph 24(b) below.

5. Subject to Defendants' full payment of the Total Federal Settlement Proceeds, the exceptions in Paragraph 9 (concerning excluded claims) and Paragraph 24 below (concerning bankruptcy proceedings commenced within ninety-one (91) days of the Effective Date of this Agreement or any payment made under this Agreement), the United States releases Defendants from any civil or administrative monetary claim the United States has for the Covered Conduct during the Relevant Period under the FCA; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of payment by mistake or unjust enrichment for the Covered Conduct during the Relevant Period.

6. Subject to Defendants' full payment of the State Settlement Amount, the exceptions in Paragraph 10 (concerning excluded claims) and Paragraph 24 below (concerning bankruptcy proceedings commenced within ninety-one (91) days of the Effective Date of this Agreement or any payment made under this Agreement), Florida (on behalf of itself, its officers, agents, agencies, and departments) agrees to release the Defendants from any civil or administrative monetary causes of action that Florida has or may have for any claims submitted or caused to be submitted to Florida's Medicaid Program as a result of the Covered Conduct during the Relevant Period.

7. Subject to Defendants' full payment of the Total Federal Settlement Proceeds and the State Settlement Amount, the exceptions in Paragraphs 9 and 10 below (concerning excluded claims), and Paragraph 24 below (concerning bankruptcy proceedings commenced within ninety-one (91) days of the Effective Date of this Agreement or any payment made under this Agreement), the Relator, for himself and for his heirs, successors, attorneys, agents and assigns,

releases Defendants (a) from any civil monetary claim the Relator has on behalf of the United States for the Covered Conduct during the Relevant Period under the FCA; (b) from any civil monetary claim the Relator has on behalf of Florida for the Covered Conduct under the Florida FCA, and (c) for any and all claims for relief, actions, rights, causes of action, suits, debts, obligations, liabilities, demands, losses, damages, costs and expenses of any kind, known or unknown, fixed or contingent, in law or equity, in contract or tort, or under any Federal or state statute or regulation, or otherwise that Relator has standing to bring and that Relator may now have or claim to have against Defendants or Defendants' current and former parent corporations, direct and indirect subsidiaries, brother or sister corporations, divisions, current or former corporate owners, and corporate successors and assigns of any of them (collectively, Defendants and Related Parties), arising out of or connected in any way to the facts, claims and circumstances alleged in, arising under, or arising from the filing of, the Civil Action, or from any other past activities and actions of Defendants and Related Parties, except that Relator does not release Relator's right to reasonable attorney's fees, costs and expenses (Relator's Attorney's Fees), pursuant to 31 U.S.C. § 3730(d) and its Florida analog.

8. In consideration of the obligations of Defendants in this Agreement and the Integrity Agreement (IA), entered into between OIG-HHS and Defendants, and conditioned upon Defendants' full and timely payment of the Total Federal Settlement Proceeds, the OIG-HHS agrees to release and refrain from instituting, directing or maintaining any administrative action seeking exclusion from Medicare, Medicaid and other Federal health care programs (as defined in 42 U.S.C. § 1320a-7b(f)) against Defendants under 42 U.S.C. § 1320a-7a (Civil Monetary Penalties Law) or 42 U.S.C. § 1320a-7(b)(7) (permissive exclusion for fraud, kickbacks, and other prohibited activities) for the Covered Conduct, except as reserved in this Paragraph and in Paragraph 9 below (concerning excluded claims). The OIG-HHS expressly reserves all rights to

comply with any statutory obligations to exclude Defendants from Medicare, Medicaid and other Federal health care programs under 42 U.S.C. § 1320a-7(a) (mandatory exclusion) based upon the Covered Conduct during the Relevant Period. Nothing in this Paragraph precludes the OIG-HHS from taking action against entities or persons, or for conduct and practices, for which claims have been reserved in Paragraph 9 below.

9. Notwithstanding the releases given in Paragraphs 5 through 7 of this Agreement, or any other term of this Agreement, the following claims of the United States are specifically reserved and are not released:

a. any liability arising under Title 26, U.S. Code (Internal Revenue Code);

b. any criminal liability;

c. except as explicitly stated in this Agreement, any administrative liability, including mandatory exclusion from Federal health care programs;

d. any liability to the United States (or its agencies) for any conduct other than the Covered Conduct during the Relevant Period;

e. any liability based upon obligations created by this Agreement;

f. any liability of individuals except for Norman and Carol Norman;

g. any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

h. any liability for failure to deliver goods or services due; and

i. any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct.

10. Notwithstanding the releases given in Paragraphs 5 through 7 of this Agreement, or any other term of this Agreement, the following claims of Florida are specifically reserved and are not released:

a. any criminal, civil, or administrative liability arising under the State revenue code;

b. any criminal liability;

c. any civil or administrative liability that any person or entity including Defendants has or may have to Florida or to individual consumers or state program payors under any statute, regulation or rule not expressly covered by the release in Paragraph 6 above, including but not limited to, any of the following claims: (i) State or federal antitrust violations; (ii) Claims involving unfair or deceptive acts and practices and/or violations of consumer protection laws;

d. any liability to Florida for any conduct other than the Covered Conduct;

e. any liability arising from the Covered Conduct for claims submitted or caused to any "managed care entities" as defined by 42 U.S.C. § 1396u-2;

f. any liability based upon obligations created in this Agreement;

g. any liability of individuals except for Norman and Carol Norman;

h. except as explicitly stated in this Agreement, any administrative liability including mandatory exclusion from Florida's Medicaid program;

i. any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

j. any liability for personal injury or property damage or for other consequential damages arising from Covered Conduct; or

k. any liability for failure to deliver goods or services due.

11. Relator and his heirs, successors, attorneys, agents and assigns shall not object to this Agreement, but agree and confirm that this Agreement is fair, adequate and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B) and Fla. Stat. § 68.084(2)(b).

12. Conditioned upon the Relator's receipt of the payments described in Paragraph 3, the Relator, for himself and for his heirs, successors, attorneys, agents and assigns, fully and finally release, waive and forever discharge the United States, its agencies, officers, agents, employees and servants from any claims arising from the filing of the Civil Action or under 31 U.S.C. § 3730, and from any claims to a share of the proceeds of this Agreement and/or the Civil Action.

13. Conditioned upon the Relator's receipt of the payments described in Paragraph 3, the Relator, for himself and for his heirs, successors, attorneys, agents and assigns, fully and finally release, waive and forever discharge Florida, its agencies, officers, agents, employees and servants from any claims arising from the filing of the Civil Action or under Fla. Stat. § 68.085, and from any claims to a share of the proceeds of this Agreement and/or the Civil Action.

14. Defendants have provided sworn financial disclosure statements (Financial Statements) to the United States and the United States and Florida have relied on the accuracy and completeness of those Financial Statements in reaching this Agreement. Defendants warrant that the Financial Statements are complete, accurate and current. If the United States and/or Florida learns of asset(s) in which Defendants had an interest at the time of this Agreement that were not disclosed in the Financial Statements, or if the United States and/or Florida learn of any misrepresentation by Defendants on, or in connection with, the Financial Statements, and if such nondisclosure or misrepresentation changes the estimated net worth set forth in the Financial Statements by $50,000 or more, the United States and/or Florida may at their option: (a) rescind this Agreement and reinstate its suit based on the Covered Conduct; or (b) let the Agreement

stand and collect the Total Settlement Amount plus one hundred percent (100%) of the value of the asset that Defendants failed to disclose. Defendants agree to voluntarily make such payment or will waive any claim of exemption from execution on assets sufficient to make such payment. Moreover, Defendants agree not to contest any collection action undertaken by the United States and/or Florida pursuant to this provision, and immediately to pay the United States and/or Florida all reasonable costs incurred in such an action, including attorney's fees and expenses.

15. In the event that the United States and/or Florida, pursuant to Paragraph 14 above (concerning disclosure of assets), opts to rescind this Agreement, Defendants agree not to plead, argue or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel or similar theories, to any civil or administrative claims that (a) are filed by the United States or Florida within 120 calendar days of written notification to Defendants that this Agreement has been rescinded; and (b) relate to the Covered Conduct, except to the extent that these defenses were available on the Effective Date of this Agreement. Notwithstanding the prohibitions contained in the preceding sentence, Defendants reserve any other defenses and claims that they may have against the United States and Florida as of the Effective Date of this agreement if the Agreement is rescinded.

16. Defendants waive and shall not assert any defenses Defendants may have to any criminal prosecution or administrative action relating to the Covered Conduct during the Relevant Period that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

17. Defendants fully and finally release the United States, Florida, and their agencies, departments, and personnel, including, but not limited to, officers, agents, employees and

servants, whether current or former in the official and individual capacities, from any claims (including attorneys' fees, costs and expenses of every kind and however denominated) that Defendants have asserted, could have asserted, or may assert in the future against the United States, Florida, or their agencies, departments, and personnel as previously described, which are only related to the Covered Conduct during the Relevant Period and the United States' and Florida's investigation and prosecution thereof.

18. Defendants fully and finally releases the Relator and his attorneys, officers, agents, employees, and servants from any claims (including attorneys' fees, costs and expenses of every kind and however denominated) that Defendants have asserted, could have asserted, or may assert in the future against the Relator or his attorneys, officers, agents, employees, and servants, which are related to the Civil Action and the Relator's investigation and prosecution thereof.

19. The Federal Settlement Amount and State Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor (*e.g.* Medicare Administrative Contractor, fiscal intermediary, or carrier), Medicaid carrier or intermediary, or any state payer, related to the Covered Conduct; and Defendants agree not to resubmit to any Medicare or Medicaid contractor, carrier, intermediary, or any state payer any previously denied claims related to the Covered Conduct, and agree not to appeal any such denials of claims, and agree to withdraw any such pending appeals.

20. Defendants agree to the following:

a. Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 and 1396-1396w-5; and the regulations and official

program directives promulgated thereunder) incurred by or on behalf of Defendants, their present or former officers, directors, employees, shareholders and agents in connection with:

(1) the matters covered by this Agreement;

(2) the United States' audit(s) and civil investigation(s) of the matters covered by this Agreement;

(3) Defendants' investigation, defense and corrective actions undertaken in response to the United States' audit(s) and civil investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

(4) the negotiation and performance of this Agreement;

(5) the payments Defendants make to the United States pursuant to this Agreement and any payments that Defendants may make to the Relator, including costs and attorneys' fees; and

(6) the negotiation of, and obligations undertaken pursuant to the IA to: (i) retain an independent review organization to perform annual reviews as described in Section III of the IA; and (ii) prepare and submit reports to the OIG-HHS.

are unallowable costs for government contracting purposes and under the Medicare Program, the Medicaid Program, the TRICARE Program, and the Federal Employees Health Benefits Program (FEHBP or FEHB Program) (hereinafter referred to as Unallowable Costs). Nothing in Paragraph 20.a.(6) that may apply to the obligations undertaken pursuant to the IA, however, affects the status of costs that are not allowable based on any other authority applicable to Defendants.

b. Future Treatment of Unallowable Costs: Unallowable Costs shall be separately determined and accounted for by Defendants, and Defendants shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by Defendants or any of its subsidiaries or affiliates to the Medicare, Medicaid, TRICARE or FEHB Programs.

c. Treatment of Unallowable Costs Previously Submitted for Payment: Defendants further agrees that, within 90 days of the Effective Date of this Agreement, it shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this Paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by Defendants or any of its subsidiaries or affiliates, and shall request and agree that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs. Defendants agree that the United States and/or Florida, at a minimum, shall be entitled to recoup from Defendants any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States and/or Florida pursuant to the direction of the Department of Justice, the Office of the Attorney General of Florida, and/or the affected agencies. The United States and Florida reserve their rights to disagree with any calculations submitted by Defendants or any of their subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this Paragraph) on

Defendants or any of their subsidiaries or affiliates' cost reports, cost statements, or information reports.

d. Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine or re-examine Defendants' books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

21. This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 22 below (waiver for beneficiaries paragraph).

22. Defendants agree that they waive and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third-party payors based upon the claims defined as Covered Conduct.

23. Defendants warrant that they have reviewed their financial situation and that they are currently solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I), and shall, to the best of their ability, remain solvent following payment to the United States of the Federal Settlement Amount, to Florida of the Florida Settlement Amount, and to Relator of the Relator's Attorney's Fees. Further, the Parties warrant that, in evaluating whether to execute this Agreement, they (a) have intended that the mutual promises, covenants and obligations set forth constitute a contemporaneous exchange for new value given to Defendants, within the meaning of 11 U.S.C. § 547(c)(1); and (b) conclude that these mutual promises, covenants and obligations do, in fact, constitute such a contemporaneous exchange. Further, the Parties warrant that the mutual promises, covenants and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay or

defraud any entity to which Defendants were or became indebted to on or after the date of this transfer, within the meaning of 11 U.S.C. § 548(a)(1).

24. If, within 91 days of the Effective Date of this Agreement or of any payment made under this Agreement, Defendants commence, or a third party commences, any case, proceeding or other action under any law relating to bankruptcy, insolvency, reorganization or relief of debtors (a) seeking to have any order for relief of Defendants' debts, or seeking to adjudicate Defendants as bankrupt or insolvent; or (b) seeking appointment of a receiver, trustee, custodian or other similar official for Defendants or for all or any substantial part of Defendants' assets, Defendants agree as follows:

a. Defendants' obligations under this Agreement may not be avoided pursuant to 11 U.S.C. § 547, and Defendants shall not argue or otherwise take the position in any such case, proceeding or action that: (i) Defendants' obligations under this Agreement may be avoided under 11 U.S.C. § 547; (ii) Defendants were insolvent at the time this Agreement was entered into, or became insolvent as a result of the payment made to the United States, Florida, or Relator; or (iii) the mutual promises, covenants and obligations set forth in this Agreement do not constitute a contemporaneous exchange for new value given to Defendants.

b. If Defendants' obligations under this Agreement are avoided for any reason, including, but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code, the United States and/or Florida, at their sole discretion, may rescind the releases in this Agreement and bring any civil and/or administrative claim, action or proceeding against Defendants for the claims that would otherwise be covered by the releases provided in Paragraphs 5-7 above, and this Agreement shall not constitute a contract or novation. Defendants agree that (i) any such claims, actions or proceedings brought by the United States and/or Florida are not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) as a result of

the action, case or proceedings described in the first clause of this Paragraph, and Defendants shall not argue or otherwise contend that the United States' and/or Florida's claims, actions or proceedings are subject to an automatic stay; (ii) Defendants shall not plead, argue or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel or similar theories, to any such civil or administrative claims, actions or proceedings that are brought by the United States within 120 calendar days of written notification to Defendants that the releases have been rescinded pursuant to this Paragraph, except to the extent that such defenses were available on the Effective Date of this Agreement; and (iii) the United States has a valid claim against Defendants in the amount of $3,672,937.82 and the United States may pursue its claim in the case, action or proceeding referenced in the first clause of this Paragraph, as well as in any other case, action or proceeding; and (iv) the State of Florida has a valid claim against Defendants in the amount of $327,062.18 and Florida may pursue its claims in the case, action, or proceeding referenced in the first clause in this Paragraph, as well as in any other case, action or proceeding.

c. Defendants acknowledge that the agreements in this Paragraph are provided in exchange for valuable consideration provided in this Agreement.

25. Upon receipt of the Initial Federal Payment and State Settlement Amount described in Paragraph 1 above, the Parties shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal of the Civil Action pursuant to Rule 41(a)(1).

26. Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement, except that Defendants acknowledge Relator's right to Relator's Attorney's Fees, pursuant to 31 U.S.C. § 3730(d) and Fla Stat. § 68.085. Relator and Defendant will resolve the amount of the Relator's Attorney's Fees by separate agreement.

27. Each party and signatory to this Agreement represents that it freely and voluntarily enters in to this Agreement without any degree of duress or compulsion.

28. This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Middle District of Florida. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

29. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

30. The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

31. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

32. This Agreement is binding on Defendants' successors, transferees, heirs and assigns.

33. This Agreement is binding on the Relator's successors, transferees, heirs and assigns.

34. All Parties may disclose this Agreement, and information about this Agreement, to the public.

35. All notices and communications required or permitted under this Agreement must be writing to the appropriate party at the address specified below:

a) If to the United States:

U.S. Attorney's Office for the Middle District of Florida
c/o Financial Litigation Unit
400 North Tampa Street, Suite 3200

Tampa, Florida 33602

b) If to the State of Florida:

Office of the Florida Attorney General
Medicaid Fraud Control Unit
135 W. Central Blvd., Suite 1000
Orlando, Florida 32801
Attn: Rebecca H. Sirkle, Esq

c) If to Relator Theodore A. Schiff:

c/o Klitzman Law Group, PLLC
PO Box 267430
Weston, Florida 3326
Attn: Lawrence S. Klitzman, Esq.; and

Berger & Montague, P.C.
1622 Locust Street
Philadelphia, Pennsylvania 19103
Attn: Daniel Miller, Esq.

d) If to Robert A. Norman, D.O., Carol Norman, Dermatology Healthcare, or Norman PA:

Robert and Carol Norman
4102 Causeway Vista Drive
Tampa, Florida 33615; and

Robert R. Warchola
Shumaker, Loop & Kendrick, LLP
Bank of America Plaza, Ste. 2800
101 East Kennedy Boulevard
Tampa, Florida 33602

Any Party may change its address for the purposes of this paragraph by giving notice as provided in this Agreement.

36. This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

**THE UNITED STATES OF AMERICA**

DATED: 8/16/18 BY: ______________________
CHRISTOPHER J. EMDEN
Assistant United States Attorney
U.S. Attorney's Office for the Middle District of Florida

DATED: 8/01/2018 BY: ______________________
LISA M. RE
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services

**THE STATE OF FLORIDA**

DATED: __________ BY: ______________________
PATRICIA A. CONNERS
Deputy Attorney General
Florida Office of the Attorney General

**THE UNITED STATES OF AMERICA**

DATED: ________ BY: ______________________

CHRISTOPHER J. EMDEN
Assistant United States Attorney
U.S. Attorney's Office for the Middle District of Florida

DATED: ________ BY: ______________________

LISA M. RE
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services

**STATE OF FLORIDA**

The State of Florida
Office of the Attorney
Medicaid Fraud Control Unit

By: ______________________ Dated: 8/7/18

PATRICIA A. CONNERS
Deputy Attorney General

**DEFENDANTS**

DATED: 8/14/18 BY: ______________________

ROBERT A. NORMAN
Individually and on behalf of
Robert A. Norman, D.O., P.A. and
Dermatology Healthcare, LLC

DATED: 8/14/18 BY: Carol Norman

CAROL NORMAN
Individually and on behalf of
Dermatology Healthcare, LLC

DATED: 8/15/2018 BY: ______________________

ROBERT R. WARCHOLA
Shumaker, Loop & Kendrick, LLP
Counsel for Robert A Norman, D.O., Carol Norman,
Robert A. Norman, D.O., P.A., and Dermatology
Healthcare, LLC

**RELATOR**

DATED: 7/20/18 BY: ______________________
THEODORE A. SCHIFF, M.D.

DATED: 7/23/18 BY: ______________________
DANIEL MILLER
Berger & Montague, P.C.
Counsel for Relator Theodore A. Schiff, M.D.

DATED: 7/23/18 BY: ______________________
LARRY KLITZMAN
Klitzman Law Group, PLLC
Counsel for Relator Theodore A. Schiff, M.D.

# EXHIBIT 1

| No | Date | Days Accrued | Interest 1.75% | Accrued Interest | Payment | Principal Balance |
|---|---|---|---|---|---|---|
| | | | | | | $ 3,672,937.82 |
| Intro | 30 days after agreement execution | - | $ - | $ - | $ 672,937.82 | 3,000,000.00 |
| 1 | 7/31/2018 | - | - | - | - | 3,000,000.00 |
| 2 | 9/30/2018 | 60 | 8,750.00 | 8,750.00 | 60,000.00 | 2,940,000.00 |
| 3 | 12/31/2018 | 90 | 12,862.50 | 21,612.50 | 650,000.00 | 2,290,000.00 |
| 4 | 3/31/2019 | 90 | 10,018.75 | 31,631.25 | 60,000.00 | 2,230,000.00 |
| 5 | 6/30/2019 | 90 | 9,756.25 | 41,387.50 | 60,000.00 | 2,170,000.00 |
| 6 | 9/30/2019 | 90 | 9,493.75 | 50,881.25 | 60,000.00 | 2,110,000.00 |
| 7 | 12/31/2019 | 90 | 9,231.25 | 60,112.50 | 570,000.00 | 1,540,000.00 |
| 8 | 3/31/2020 | 90 | 6,737.50 | 66,850.00 | 60,000.00 | 1,480,000.00 |
| 9 | 6/30/2020 | 90 | 6,475.00 | 73,325.00 | 60,000.00 | 1,420,000.00 |
| 10 | 9/30/2020 | 90 | 6,212.50 | 79,537.50 | 60,000.00 | 1,360,000.00 |
| 11 | 12/31/2020 | 90 | 5,950.00 | 85,487.50 | 570,000.00 | 790,000.00 |
| 12 | 3/31/2021 | 90 | 3,456.25 | 88,943.75 | 60,000.00 | 730,000.00 |
| 13 | 6/30/2021 | 90 | 3,193.75 | 92,137.50 | 60,000.00 | 670,000.00 |
| 14 | 9/30/2021 | 90 | 2,931.25 | 95,068.75 | 60,000.00 | 610,000.00 |
| 15 | 12/31/2021 | 90 | 2,668.75 | 97,737.50 | 550,000.00 | 60,000.00 |
| 16 | 3/31/2022 | 90 | 427.60 | 98,165.10 | 60,000.00 | - |
| 17 | 6/30/2022 | 90 | 429.47 | 98,594.57 | 98,594.57 | - |

# EXHIBIT 2

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,
and STATE OF FLORIDA,
*ex rel.* THEODORE A. SCHIFF, M.D.,

Plaintiffs,

v. Case No. 8:15-cv-1506-T-23AEP

ROBERT A. NORMAN, D.O., et al.,

Defendants.
_______________________________________/

## CONSENT JUDGMENT

This matter is before the Court upon the consent of the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General of the Department of Health and Human Services (HHS) (collectively, United States), the State of Florida, acting through the Office of the Attorney General (Florida); Robert A. Norman, D.O. (Norman), Carol Norman (Carol Norman), Robert A. Norman, D.O., P.A. (Norman PA), and Dermatology Healthcare, LLC (Dermatology Healthcare) (collectively, Defendants), and Relator, Theodore A. Schiff (Relator). Defendants consent to entry of this judgment having been established by virtue of the Settlement Agreement between the United States, Florida, Defendants and Relator that became effective on _______________, 2018 (Settlement Agreement), attached as Exhibit A hereto. It now appears to the Court as follows:

1. This Court has jurisdiction over the United States, Florida, Defendants and Relators (Parties) as well as over the subject matter of this action.

2. The Settlement Agreement was prepared and signed by the Parties, and took effect on ______________, 2018.

3. The Settlement Agreement provides, *inter alia*, that Defendants shall pay a total sum of $4,000,000, such sum consisting, in part, of $672,937.83 owed to the United States and $327,062.17 to Florida which Defendants shall pay within 30-days of the Effective Date of the Settlement Agreement (as defined in the Agreement), and the remaining $3,000,000 of which Defendants shall pay to the United States in installments at an interest rate of 1.75% per annum as set forth in Exhibit 1 of the Settlement Agreement.

4. The Settlement Agreement further provides that this Consent Judgment may be entered if Defendants fail to make any of the payments, were provided written notice of the default, and failed to cure the default within thirty calendar days, as specified in Paragraph 1 of the Settlement Agreement.

5. Such events have occurred.

**WHEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that judgment is entered:

a. in favor of the United States and against Defendants, jointly and severally; to-wit:

i. Robert A. Norman who resides at 4102 Causeway Visa Dr, Tampa Florida 33615;

ii. Carol Norman who resides at 4102 Causeway Visa Dr, Tampa Florida 33615;

iii. Robert A. Norman, D.O., P.A., a Florida professional association with an address of 8002 Gunn Hwy, Tampa, Florida 33626;

iv. Dermatology Healthcare, LLC a Florida limited liability company with an address of 8002 Gunn Hwy, Tampa, Florida 33626.

in the amount of $3,672,937.83, plus interest, as set forth in the Settlement Agreement, plus interest in accordance with 28 U.S.C. §1961, for which let execution issue forthwith.

b. in favor of the State of Florida and against Defendants, jointly and severally; in the amount of $327,062.17, plus interest, as set forth in the Settlement Agreement, plus interest in accordance with 28 U.S.C. §1961, for which let execution issue forthwith.

c. in favor of the Relator and against Defendants, jointly and severally, as to liability only, pursuant to 31 U.S.C. §3730(d) and Florida Statutes Chapter 68, for Relator's attorney's fees, costs and expenses incurred in connection with this matter (Relator Recovery).

d. It is further ordered and adjudged that this Consent Final Judgment shall be deemed to have been served upon the Parties at the time of its entry by the Court.

e. It is further ordered and adjudged that the Court shall retain jurisdiction with regard to any enforcement proceedings regarding the underlying Settlement Agreement, this Consent Final Judgment, or any other proceeding arising under this Consent Final Judgment, including a determination of the damages associated

with the Relator Recovery herein adjudged, all of which will be construed under federal law to the extent applicable and otherwise by the laws of the State of Florida.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida this_____day of

____________________, 20___.

______________________________
STEVEN D. MERRYDAY
United States District Judge

The parties hereby stipulate and agree to the entry of this Consent Final Judgment.

**THE UNITED STATES OF AMERICA**

BY: ______________________________
CHRISTOPHER J. EMDEN
Assistant United States Attorney
U.S. Attorney's Office for the
Middle District of Florida

Dated: the 16th day of August, 2018

**THE STATE OF FLORIDA**

BY: ______________________________
PATRICIA A. CONNERS
Deputy Attorney General Florida
Office of the Attorney General

Dated: the 7th day of August, 2018

**DEFENDANTS ROBERT A. NORMAN, ~~ROBERT~~ A. NORMAN, D.O, P.A., CAROL NORMAN AND DERMATOLOGY HEALTHCARE, LLC**

BY: ______________________
ROBERT A. NORMAN
Individually and on behalf of
Robert A. Norman, D.O., P.A.

Dated: the 14th day of August, 2018

BY: ______________________
CAROL NORMAN
Individually and on behalf of
Dermatology Healthcare, LLC

Dated: the 14th day of August, 2018

BY: ______________________
ROBERT R. WARCHOLA
Shumaker, Loop & Kendrick, LLP
Counsel for Robert A Norman, D.O.,
Carol Norman, Robert A. Norman,
D.O., P.A., and Dermatology
Healthcare, LLC

Dated: the 15 day of August, 2018

**RELATOR**

BY: ______________________
THEODORE A. SCHIFF, M.D.

Dated: the 20 day of July, 2018

BY: ______________________
DANIEL MILLER
Berger & Montague, P.C.
Counsel for Relator
Theodore A. Schiff, M.D.

Dated: the 23 day of July, 2018

BY: ______________________
LARRY KLITZMAN
Klitzman Law Group, PLLC
Counsel for Relator
Theodore A. Schiff, M.D.

Dated: the 23 day of July, 2018