Exhibit 4

Memorandum of Law in Support of Relator's
Verified Motion for Attorney's Fees, Costs, and Expenses

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,
and STATE OF FLORIDA,
*ex rel*. THEODORE A. SCHIFF, M.D.,

Plaintiffs,

v. Case No. 8:15-cv-1506-T-23AEP

ROBERT A. NORMAN, D.O., et al.,

Defendants.
_______________________________________/

**MEMORANDUM OF LAW IN SUPPORT OF RELATOR'S VERIFIED MOTION FOR ATTORNEY'S FEES, COSTS, AND EXPENSES**

## I. INTRODUCTION

The Federal False Claims Act ("FCA") and its State of Florida analog include mandatory fee-shifting provisions, directing that the Plaintiff-Relator shall be fully compensated for all reasonable attorneys' fees, costs and expenses in an FCA case which settles. *See, e.g.,* 31 U.S.C. §3730(d)(1). Relator and the law firms of Klitzman Law Group, PLLC (the "Klitzman Firm") and Berger & Montague, P.C. (the "Berger Firm") (collectively, "Relator's Counsel") submit this memorandum in support of an award of attorneys' fees, costs and expenses – jointly and severally against defendants Robert A. Norman, D.O. (Norman), Carol Norman (Carol Norman), Robert A. Norman, D.O., P.A. (Norman PA), and Dermatology Healthcare, LLC (Dermatology Healthcare) ("Dermatology Healthcare", together with Norman, Carol Norman, and Norman PA the "Norman Defendants").

Alongside the government, Relator's Counsel litigated this FCA case against Defendants for over three years before achieving a successful settlement whereby judgment has been entered in favor of the United States and against the Norman Defendants for $4,000,000.00.

To place in perspective the value achieved by bringing a halt to the illegal practices of the Norman Defendants in this case, it should be noted that during the period from 2012-2015 (only a portion of the period covered by Relator's First Amended Complaint (the "Amended Complaint")), the Norman Defendants collected from Medicare more than $3,000,000.00[1] on claims submitted under the radiation related current procedural terminology codes ("CPT Codes") which are the subject of the false claims described in the Amended Complaint.[2] By comparison, the total amount being sought by Relator's Counsel for attorney's fees, costs and expenses under 31 U.S.C. §3730(d)(1) and its Florida analog ("collectively "Relator's Fees") represents less than 7% of the amount paid out by Medicare to the Norman Defendants during the 2012-2015 period, and less than 5% of the judgment amount.

Relator's Counsel worked hand in hand with the Assistant United States Attorneys who investigated and prosecuted the case, and provided continuing assistance and support on virtually each issue involved in the case. Relator Counsels' participation included research and guidance on health care regulatory and related issues such as compliance requirements and permitted safe-harbors under the Anti-Kickback Act and Stark Law, physician supervision requirements for radiation treatments, physician assistant billing procedures, physician record documentation

[1] See, Centers for Medicare and Medicaid Services, National Plan and Provider Enumeration System, American Medical Association (2012-2015) Claims Data

[2] All of the false claims at issue in this case were billed by and paid to the Norman Defendants.

requirements, and guidance and analysis concerning the use of multiple CPT Codes at issue in this case.

Further, Relator's Counsel worked extensively with the United States Attorney's office in connection with settlement negotiations and specifically in uncovering undisclosed liabilities affecting several parcels of real estate offered by Defendants in settlement of this litigation. As a result or title reports and other investigatory work undertaken by Relator's Counsel, at its expense, the United States restructured the settlement from an arrangement based in large part upon the Norman Defendants ability to sell certain parcels of real estate, the timing of which was under their control, to the payment of a fixed dollar amount on specified dates without regard to the timing on any particular real estate sale. With the input of Relator's counsel, the United States was able to reach an acceptable settlement structure and judgment amount with the Defendants based upon a realistic assessment of the Defendant's ability to pay.

In prosecuting the litigation against Defendants, Relators' Counsel have incurred a total lodestar, as captured through daily time reporting and made a part of Counsel's books and records, of $141,481.26. *See,* Declarations of Lawrence Klitzman ("*Klitzman Declaration*", attached as Exhibit 1 to Relator's Verified Motion To Determine The Amount Of Defendants Attorney's Fees, Costs, And Expenses Payable Under 31 U.S.C. §3730(D) and Florida Statutes §68.085( C) (the "Motion") (showing the Klitzman Firm's total lodestar of $76,038.26, through July 18, 2018), and Daniel R. Miller ("*Miller Declaration*", attached to the Motion as Exhibit 2) (showing the Berger firm's total lodestar of $65,443.00 through August 7, 2018).

## II. ARGUMENT

### A. The False Claims Act Requires The Court Award Relators Their Reasonable Attorneys' Fees, Costs, and Expenses Incurred Pursuing This Action

Under the FCA's mandatory fee-shifting provisions, Relator is entitled to all reasonable attorneys' fees, costs and expenses. 31 U.S.C. §3730(d)(1) and (d)(2) ("All such expenses, fees, and costs shall be awarded against the defendant."); *see also* Fla. Stat. §68.085(1)(c).

Relator retained counsel in this matter by entering into a contingent-fee arrangement, whereby he retained counsel for the prosecution of the *qui tam* suit with the understanding that counsel would be paid both a portion of any Relator's share in the event of a successful outcome, and attorney' fees awarded by the court or obtained in settlement. Such agreements are the norm in *qui tam* cases.

**B. The Attorney Hours Requested Are Reasonable**

Under the FCA, the reasonableness of a fee is determined by first using a lodestar calculation. *See United States ex rel. Jacobs v. Patrol Servs*., 202 Fed. Appx. 357, 359 (11th Cir. 2006). "The starting point in fashioning an award of attorney's fees is to multiply the number of hours reasonably expended by a reasonable hourly rate." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994). The result of this calculation is presumed to be reasonable. *See Untied Auto. Workers 259 v. Metro Auto Ctr*., 501 F.3d 283,290 (3d Cir. 2007) (*citing Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). This method "produce[s] an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue v. Kenny A. ex rel. Winn*, 599 U.S. 542, 552 (2010).

The Klitzman and Berger Firms are also entitled to be compensated for the time spent seeking an award of fees, e.g., the time spent preparing the instant motion. *Norman* v. *Housing Authority of Montgomery*, 836 F.2d 1292, 1305 (11th Cir. 1988) ("To paraphrase the acute observation of baseball great Yogi Berra, a case ain't over till it's over. This means that . . . counsel

are entitled to compensation until all benefits obtained by the litigation are in hand. Hence, hours reasonably expended on post-decree administration are compensable"). This "fees on fees" approach has been commonly applied in the FCA context. *United States ex rel. Doe v. Pennsylvania Blue Shield, Xact Medicare Serv*., 54 F. Supp. 2d 410, 414 (M.D. Pa. 1999); *United States ex rel. Doe v. Biotronik, Inc*., No. 2:09-cv-3617-KJM- EFB, 2015 U.S. Dist. LEXIS 144447 at *38 (E.D. Cal. Oct. 22, 2015); and *United States ex rel. ATC Distrib. Group, Inc. v. Ready-Built Transmissions, Inc.*, No. 03 Civ. 2150 (GWG), 2007 U.S. Dist. LEXIS 65963 at *17-18 (S.D.N.Y. Sept. 7, 2007).

So-called "fees on fees" are particularly appropriate here, where the Norman Defendants have thus far ignored Relator's statutory entitlement to Fees and their statutory obligation to pay same. Indeed, it is that ignorance which compelled Relator to file the instant motion in order to vindicate his irrefutable right to Fees.

Using the adjusted lodestar calculation, the Relator's attorneys' fees total $141,481.26. Attached to the *Klitzman Declaration* as Exhibit 2 and the *Miller Declaration* as Exhibit 1 are detailed time-keeping reports for this matter identifying the time keeper, time spent, and a description of the work performed. Each of these declarations provides a detailed explanation regarding why the hours expended in this matter are reasonable in light of the complexity of the case. For example, the Klitzman Declaration states, *inter alia*,

> ¶13. [I]t should be noted that this was a contingent fee case, i.e., Counsel were incentivized to only perform work which was necessary to advance the case. There certainly was no incentive to "overbill" the case.
>
> ¶14. Counsel's work on this case began more than three and one-half years ago, several months before the filing of the original complaint in June, 2015, and continues through the instant motion. During the pre-complaint filing period, the Klitzman Firm was actively doing extensive legal research on the healthcare regulatory, coding, billing and other issues involved in this case, and working closely with the investigation team.

> ¶15. Due to an ongoing professional relationship with co-counsel Daniel Miller of the Berger Firm, including in other False Claims Act litigation involving alleged violations of many of the same regulatory procedures involved in the instant case, and the costs and risks associated with undertaking a litigation of this nature, the Klitzman Firm decided it would be beneficial to again co-counsel this case with the Berger Firm. The Berger Firm participated side by side with the Klitzman Firm in every aspect of these proceedings and was an invaluable resource.
>
> ¶18. This was a complex case that required close coordination between the Klitzman Firm and the Berger Firm. There are many time entries referencing calls, emails or meetings among Counsel. Further, this matter required the assistance and coordination of a number of different attorneys at the Klitzman and Berger Firms. There were no directions for how to proceed in pursuing this rather unusual case. This necessitated Counsel conferring frequently in order to develop, strategize and plan.

*Klitzman Declaration,* ¶13-15 and 18.

**C. The Hourly Rates Sought By Relator's Counsel are Reasonable**

To meet the burden of proving a reasonable hourly rate, the moving party must produce "satisfactory evidence" that the hourly rate being requested is in line with "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation." *See Norman v. Housing Auth. of the City Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). The hourly rate for Mr. Klitzman of $495.00 is reasonable for the Ft. Lauderdale/Miami market and in light of his experience. Mr. Klitzman has been the principal of the Klitzman Firm for more than 30 years. He has significant experience handling complex commercial litigation matters which have resulted in multi-million dollar judgments and recoveries against financial institutions and Fortune 500 Companies. In 2017, Mr. Klitzman together with the Berger Firm recovered $5.45 million dollars in another health care fraud FCA case. See, *Klitzman Declaration* ¶2. In addition to his litigation practice, Mr. Klitzman has a transactional practice in which he has represented physician practices with as many as 300 employees on matters concerning health care regulatory compliance including compliance with the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b) (the "AKS"), and Stark Law, 42 U.S.C. § 1395nn which were

prominent issues in this case. *Id., See, also, Blue Water Marine Servs. v. M/Y Natalita, III,* 2010 U.S. Dist. LEXIS 30242, at *12–15, 2010 WL 1330265 (S.D.Fla. Feb. 2, 2010) (finding $425 hourly rate reasonable for an experienced partner); *MKT Reps S.A. De C.V. v. Standard Chartered Bank Int'l (Americas) Ltd.,* No. 10-22963-CIV, 2013 WL 1289261, at *9 (S.D. Fla. Mar. 28, 2013) (finding an hourly rate of $500 for Greenburg Traurig partner practicing in the South Florida market was appropriate and reasonable); *Global Horizons Inc. v. Del Monte Fresh Produce N.A., Inc*., 2009 WL 855970 (S.D.Fla. Mar. 31, 2009) (awarding discounted hourly rates for premium South Florida law firm of $300–475 per hour (partners); $185–310 (associates); and $160 (paralegals)). The rates of the remaining attorneys are also in line with the South Florida legal market as they range from $285-$295 for associate attorneys in complex litigation.

Daniel R. Miller is a shareholder at Berger & Montague, PC, one of the most successful plaintiff's firms in the country (the firm has recovered more than $30 billion in verdicts and settlements). Prior to joining the firm, Mr. Miller prosecuted FCA actions during his 16-year career as a Deputy Attorney General in the Delaware Department of Justice, where he played a significant role in cases which returned more than $2.5 billion to state and federal treasuries. After serving as the President of the National Association of Medicaid Fraud Control Units, Mr. Miller entered private practice where he exclusively represents whistleblowers in complex fraud cases in jurisdictions throughout the United States. Given his extensive experience in complex federal court litigation under the FCA and his broad trial experience (having tried more than 125 cases to jury verdict) Mr. Miller's hourly billing rate is $725. This rate is reasonable not only in his home market of Philadelphia, Pennsylvania, but is also reasonable in the Central Florida legal market for an attorney of his education, background, and experience in complex litigation. *See Lehman Bros. Holdings v. Key Fin. Corp*., No. 8:09-CV-623- T-17EAJ, 2011 U.S. Dist. LEXIS 99346 at *10

(M.D. Fla. Aug. 12, 2011) (report and recommendation) (finding $639 hourly rate reasonable for New York attorney in light of his experience); *Richards v. Financial Services Authority*, 2010 WL 8411419 (M.D. Fla. 2010) (awarding blended hourly rates of $626.00 for partners and $308.00 for associates of a Miami law office). The rates for Senior Counsel, Lane Vines; $575.00; and Associate Attorney, Jonathan DeSantis; $420, respectively, are similarly reasonable for work in complex litigation. *Id*. *Browning*, 2007 U.S. Dist. LEXIS 75097 (holding reasonable seventh-year associate hourly rate at $375, fourth-year associate hourly rates at $325–350).

These rates are similar to the rates charged by other major law firms in the Philadelphia area where the Berger firm is headquartered. *See In re Avandia Mktg., Sales Practices & Prods. Liab. Litig*., 2012 U.S. Dist. LEXIS 180561, *22-25 (E.D. Pa. Oct. 19, 2012) (taking judicial notice to a 2011 sampling of nationwide billing rates submitted by the Plaintiff's counsel listing partners at Philadelphia-based firm Pepper Hamilton bill up to $825 per hour, "and partners at other Philadelphia law firms have similar top hourly rates ($900 at Cozen O'Connor, $875 at Duane Morris, $750 at Saul Ewing, and $725 at Fox Rothschild)").

To further buttress the fact that counsel's fees are reasonable, Relator's Counsel consulted an expert FCA practitioner, Jonathan Kroner ("Kroner"), for his opinion. *See*, declaration of Jonathan Kroner ("*Kroner Declaration*") attached to the Motion as Exhibit 3. Mr. Kroner's primary practice involves the pursuit of federal FCA claims in the Southern District of Florida. Mr. Kroner has been the managing partner of the Jonathan Kroner Law Office since 1990. He was admitted to the Federal Bar (Southern District Florida) and the Florida Bar in 1981. Mr. Kroner holds professional degrees from the University of Miami (J.D. 1981), Emory University (M.B.A. 1978), and New College of Florida (B.A. 1976). He is AV rated by Martindale-Hubbell and has a reputation with lawyers in this district and others for proficiency with the FCA. For 18 years, the

principal part of his practice has been Federal False Claims act litigation. He has published FCA-related articles in the American Bar Association, Litigation Section, and the False Claims Act & *Qui Tam* Quarterly Review. He is very familiar with FCA litigation, and with the work required in intervened cases. See, *Kroner Declaration.* ¶3-4 (citing cases in which Kroner served as relator counsel).

Mr. Kroner reviewed the salient portions of the docket and related filings, the description of the qualifications and experience of the time-keepers, and concluded as follows:

> "I am very familiar with the federal court legal market in the Middle District of Florida, including the market as it relates to complex *qui tam* litigation (such as the instant case). My Client's cases in this District listed in 3 and 4 above, three still-sealed cases (not listed) have also made me familiar with this district. It is my opinion that the hourly rates listed above are equal to, and in many cases less, than the market value of such legal services in this District."

*See, Kroner Declaration* ¶12.

**D. Counsel Exercised Billing Judgment**

Consistent with the Supreme Court's instruction that prevailing parties should "make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary," *Hensley*, 461 U.S. at 434, Relator's Counsel applied billing judgment with regard to the instant request.

**E. The Expenses And Costs Sought Are Reasonable**

In addition to reasonable attorneys' fees, Counsel are entitled to recover costs and expenses from Defendants pursuant to Section 3730(d) and its Florida FCA analog. Unlike costs that are specifically enumerated in 28 U.S.C. § 1920, the term "expenses" "include[s] all of the expenditures made by a litigant in connection with the action." *See Copper Liquor, Inc. v. Adolph Coors Co.*, 684 F.2d 1087, 1098 (5th Cir. 1982) (explaining difference in antitrust context). Reasonable expenses compensable under the FCA have been held to include those reasonable

expenses incurred which are "normally charged to a fee-paying client, in the course of providing legal services." *See Planned Parenthood v. AG*, 297 F.3d 253, 267 (3d Cir. 2002)(citation omitted); *Laffey v. Northwest Airlines, Inc.,* 746 F.2d 4, 30 (D.C. Cir. 1984); *see also Salazar v. District of Columbia*, 123 F. Supp. 2d 8, 16-17 (D.D.C. 2000).

Types of necessarily incurred costs and expenses recoverable under 31 U.S.C. § 3730(d)(2) include, but are not limited to, expert witness fees, attorney travel costs, and costs of creating demonstrative exhibits for trial. *See United States ex rel. v. Garibaldi v. Orleans parish Sch. Bd.*, 46 F. Supp. 2d 546, 567 (E.D. La. 1999). The expenses requested by the Relator are itemized in an attachments to the *Klitzman Declaration* at Exhibit 4 and the *Miller Declaration* at Exhibit 1, and were reasonably incurred during an over four (4) year period of investigation and litigation.

In sum, Relator seeks the following expenses:

| **Category of Expense** | **Amount Sought** |
|---|---|
| Filing Fees | $400.00 |
| Attorney Travel and Travel Incidentals | $384.79 |
| Telephone Costs | $22.11 |
| Legal Research Costs | $384.75 |
| Investigator Costs | $750.00 |
| Delivery Costs | $110.00 |
| Title Search | $950.00 |
| **TOTAL** | **$3,001.65** |

A portion of the costs advanced in this case relate to investigation fees paid to Kalwary Investigations and Consulting, LLC ("Kalwary") (See*, Klitzman Declaration* ¶11 and Exhibit 4). Such expenses have been permitted as recoverable non-taxable costs pursuant to similar federal fee-shifting statutes. *See, e.g., Trotter v. Columbia Sussex Corp,* No. 08-0412-WS-M, 2010 U.S. Dist. LEXIS 7625 at *35-38 (S.D. Ala. Jan, 29, 2010), citing *Dowdell v. City of Opaka* 698 F. 2d 1181, 1192 (11th Circ. 1983), accord *Barnes* 168 F3d 438-9. Kalwary was hired to investigate the mobile radiation treatment administered at various assisted living and other

facilities around the state of Florida. Kalwary's investigation confirmed what the Relator understood from witnesses previously interviewed by the Relator; that mobile radiation treatments were being administered by technicians who were not physicians. This was a crucial fact which supported the most significant theories underlying the facts of this case. Medicare regulations require direct physician supervision of non-physician employees (i.e. physician assistants) while they are administering radiation treatments. If a supervising physician was not present when radiation treatments were administered in the mobile units, Medicare could not be billed for the treatments. Thus, the investigative expenses directly led to evidence supporting the allegations in the complaint, which were later corroborated by the government.

## III. CONCLUSION

Counsel respectfully requests that the Court enter an Order awarding them attorneys' fees in the amount of $141,481.26 and costs and expenses in the amount of $3001.65, for a grand total of $144,482.91, plus fees and costs incurred subsequent to July 18, 2018 for the Klitzman Firm and subsequent to August 7, 2018 for the Berger Firm.

Dated August 16, 2018 Respectfully submitted,

KLITZMAN LAW GROUP, PLLC
Lawrence S. Klitzman, Esquire
(Florida Bar No. 312878)
1301 International Parkway
Suite 120
Sunrise, Florida 33323
Tel: (954)-384-4421
Fax: (954)-389-3579

BERGER & MONTAGUE, P.C.
Daniel R. Miller, Esquire
1622 Locust Street
Philadelphia, Pennsylvania 19103
Tel: (215)-875-3000
Fax: (215)-875-5807
***Attorneys for the Relator***

**CERTIFICATE OF SERVICE**

I hereby certify that on August 16, 2018, I electronically filed the foregoing with the Clerk of Court, using CM/ECF. I also certify that the foregoing document was served on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF, or via other means if required.

/s Lawrence S. Klitzman
Lawrence S. Klitzman