UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA
and STATE OF FLORIDA *ex rel.*
THEODORE A. SCHIFF,

Plaintiffs,

v. CASE NO. 8:15-cv-1506-T-23AEP

ROBERT A. NORMAN, et al.,

Defendants.
_____________________________________/

**ORDER**

The relator sues (Doc. 1) the defendants under the False Claims Act (FCA). A dermatologist in South Florida, the relator apparently gleaned from public databases, anonymous calls to the defendants' offices, and stakeouts of the defendants' operations that the defendants fraudulently bill Medicare for radiation therapy. Finding that the relator's endeavor yielded an imprecise complaint glutted with conclusory allegations but starved for detail, a January 2, 2018 order (Doc. 36) dismisses the amended complaint for failing to plead fraud with particularity and grants leave to amend further. No amendment followed. The parties announce (Doc. 39) a settlement, which resolves this action except for the relator's claim for an attorney's fee. (Doc. 39 at 2)

In accord with Local Rule 3.08(b), a March 22, 2018 order (Doc. 41) (1) dismisses the action subject to the right of any party within sixty days (i) to stipulate to a form of final judgment or dismissal or (ii) to move to vacate the dismissal for good cause and (2) permits the relator to move for an attorney's fee. Over the next three months, the relator attempted to settle the claim for an attorney's fee. The defendants reportedly "refused to substantively respond," which prompted the relator to move (Doc. 48) for an attorney's fee.

An August 24, 2018 order (Doc. 49) strikes the fee motion for violating the formatting requirements of the Local Rules. Submitting (Doc. 50) a compliant motion, the relator requests a fee of $144,482.91 primarily comprising the time expended by counsel drafting the original complaint, amending the complaint, and responding to the motion to dismiss. To support the requested fee, the relator appends (Doc. 50-2, 50-3) a log describing the tasks that each of the relator's attorneys performed, the time expended on each task, and each attorney's hourly rate. Also, the relator appends the declaration of Jonathan Kroner, a Miami attorney, who opines that the requested hourly rates are reasonable.

To pursue this action, the relator entered a contingency agreement with the Klitzman Law Group, a Miami firm, and Berger & Montague, a Philadelphia firm. From the Klitzman firm, Lawrence Klitzman, Ashley Fernald, Zachary Conjeski, and Geoffrey Langbart represented the relator.

- Lawrence Klitzman is the "principal" of the Klitzman firm, has practiced law for thirty-eight years, and has litigated several FCA actions. (Doc. 50-4 at 7) Klitzman expended 124 hours representing the relator and reportedly bills $495 per hour. (Doc. 50-2 at 9)
- Ashley Fernald is "of counsel," has practiced law for five years, and apparently has no earlier *qui tam* experience. (Doc. 50-4 at 7) Fernald expended thirteen hours representing the relator and reportedly bills $285 per hour. (Doc. 50 at 2–3)
- Geoffrey Langbart is a first-year associate and apparently has no earlier *qui tam* experience. Langbart expended thirty-four hours representing the relator and reportedly bills $295 per hour. (Doc. 50-4 at 8)
- Zachary Conjeski is a former associate of the Klitzman firm, expended three hours representing the relator, and reportedly bills $285 per hour. (Doc. 50-2)

From the Berger firm, Daniel Miller, Lane Vines, and Jon DeSantis represented the relator.

- Daniel Miller is a shareholder of the Berger firm. As a Deputy Attorney General for the Delaware Department of Justice, Miller for fifteen years prosecuted violations of the FCA. (Doc. 50-4 at 6) In private practice, Miller for the last seven years has exclusively represented whistleblowers in fraud actions. (Doc. 50-4 at 6) Miller expended about forty-three hours representing the relator and reportedly bills $725 per hour. (Doc. 50-3 at 8)

- Lane Vines is "senior counsel," "concentrates his practice" on *qui tam* litigation, and has seventeen years of litigation experience. Vines expended fifty-five hours representing the relator and reportedly bills $575 per hour. (Doc. 50-3 at 13)
- Jon DeSantis is an associate of the Berger firm, litigates FCA actions exclusively, and has six years of litigation experience. DeSantis expended five hours representing the relator and reportedly bills $420 per hour.

Multiplying each Berger-attorney's hourly rate by the respective hours that each attorney expended, the relator requests a fee of $76,038.26 for services rendered by the Klitzman firm and $65,443.00 for services rendered by the Berger firm. The defendants concede (Doc. 51 at 20) the relator's entitlement to an attorney's fee but argue that the requested fee is unreasonable.

**DISCUSSION**

Under 31 U.S.C. § 3730(d)(1), a settling relator can recover a "reasonable" attorney's fee. The relator must establish the reasonableness of the fee. *Norman v. Housing Authority*, 836 F.2d 1292, 1299 (11th Cir. 1998). To determine reasonableness, a district court calculates the "lodestar" by multiplying "the number of hours reasonably expended . . . by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010) ("[T]he lodestar method produces an award that *roughly* approximates the fee that the prevailing attorney would have received if . . . representing a paying client who was

billed by the hour in a comparable case.") (emphasis in original). A federal district court — an "expert" on the reasonableness of a fee — may "consider its own knowledge and experience" to craft a reasonable fee. *Norman*, F.2d at 1303.

**I. A Reasonable Hourly Rate for Each Attorney**

A fee movant must produce evidence showing that the requested hourly rate is reasonable. *Norman*, 836 F.2d at 1299. A reasonable hourly rate "is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation." *Norman*, 836 F.2d at 1299. To recover a non-local rate, the fee movant must show a lack of local attorneys capable of adequately representing the fee movant. *Am. Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999).

The defendants argue that each Berger-attorney's hourly rate is unreasonable because each Berger-attorney's rate greatly exceeds the local market rate. (Doc. 51 at 6–7) No submission by the relator evidences a lack of Tampa attorneys capable of adequately representing the relator in this FCA action. And experience confirms that the Tampa legal market includes many attorneys capable of adequately representing the relator. The relator cannot recover non-local rates.

To support the requested rates, the relator relies on the declaration (Doc. 50-4) of Jonathan Kroner, a Miami attorney who litigated two FCA actions in Tampa. Kroner opines that the "hourly rates [requested] are equal to, and in many cases less, than the market value of such legal services in this District." (Doc. 50-4 at 9)

However, Kroner provides no evidence of a comparable FCA fee award in Tampa and has modest FCA-litigation experience in Tampa. Conclusory and sparse on detail, Kroner's declaration is unpersuasive. *Norman*, 836 F.2d at 1299 ("The weight to be given to opinion evidence of course will be affected by the detail contained in the testimony on matters such as similarity of skill, reputation, experience, similarity of case and client, and breadth of the sample of which the expert has knowledge.")

The defendants propose (Doc. 51 at 6) that each Berger-attorney's hourly rate equal the hourly rate of a roughly comparable Klitzman attorney. However, the relator cannot recover a Miami or Philadelphia market rate, and the relator fails to submit evidence showing the typical hourly rate billed in Tampa. Experience suggests that the typical hourly rate in Miami tends to exceed the typical hourly rate in Tampa by about ten to fifteen percent. *See, e.g.*, *Rynd v. Nat'l Mut. Fire. Ins. Co.*, No. 8:09-cv-1556, 2012 WL 939387, at *14 (M.D. Fla. Jan. 25, 2012) (Wilson, M.J.) (finding an hourly rate of $375–$400 consistent with the hourly rate for a highly experienced Tampa attorney), *adopted*, 2012 WL 939247 (Whittemore, J.); *Estefan Enters., Inc. v. Coco Bongo, Inc.*, No. 8:05-cv-810, 2007 WL 9723596, at *5 (M.D. Fla. Feb. 23, 2007) (Wilson, M.J.) (reducing Miami counsel's hourly rate by about twenty percent), *adopted*, Doc. 53 (Kovachevich, J.). In this circumstance, a reasonable hourly rate is

- Lawrence Klitzman, Daniel Miller, and Lane Vines: $425
- Ashley Fernald, Zachary Conjeski, and Jon DeSantis: $230
- Geoffrey Langbart: $200*

**II. Hours Reasonably Expended by Each Attorney**

A fee movant must "make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 434, 438 (1983). The defendants argue (Doc. 51 at 7) for excluding "double-billed" entries, "over-billed" entries, vague entries, and entries describing counsel's performance of an administrative or non-compensable task. Asserting that the defendants attempt to "mislead the Court on the law," the relator moves (Doc. 52) for leave to reply, which the defendants oppose. The relator raises substantive argument in the motion for leave to reply — a disfavored and often abusive tactic. The motion (Doc. 52) is deemed a reply, the arguments raised are considered, and the motion for leave to reply is denied.

1. "Double Billing"

The defendants object that the relator can recover for no more than one attorney's participation on a conference call. However, "[t]ime spent in attorney conferences is generally compensable for each participant." *Am. Charities, Inc. v. Pinellas Cty.*, 278 F. Supp. 2d 1301, 1315 (M.D. Fla. 2003) (Kovachevich, J.); *Nat'l*

---

* The relator fails to explain why Langbart, a first-year Klitzman associate, bills at a rate higher than Fernald, a Klitzman attorney with five years of experience.

*Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1337 (D.C. Cir. 1982) ("attorneys must spend at least some of their time conferring with colleagues, particularly their subordinates, to ensure that a case is managed in an effective [and] efficient manner.") The relator's counsel expended reasonable time on each conference call, and the log entries show that counsel generally discussed case management and strategy. (Doc. 51 at 7–8) The objection is overruled.

2. Excessive Billing

The defendants object that the relator should not recover fully for counsel's drafting the original complaint (which failed to name the correct defendants) and the amended complaint (which failed to plead fraud with particularity). Although further amendment might have remedied the amended complaint's deficiencies, the relator's failure to submit a single satisfactory pleading warrants a modest reduction of the time expended. Klitzman's time is reduced by five hours and Miller's time is reduced by two hours.

Also, the defendants object to counsel's expending eighty-nine hours to respond to a nine-page motion to dismiss. Given the relative simplicity of the motion and counsel's claimed expertise with the False Claims Act, the time expended is excessive and a reduction by half is warranted. Vines's time is reduced by twenty-five hours, Fernald's time is reduced by six hours, and Klitzman's time is reduced by five hours.

Further, the defendants object that Miller "block billed" his review of the motion to dismiss, that is, Miller included several distinct tasks within each billing entry. Although Miller might have expended reasonable time reviewing the defendants' nine-page motion to dismiss, Miller's "block billing" precludes a reliable determination of the time allocated to review. Miller's time is reduced by 1.5 hours. *Steffin v. Senterfitt*, No. 8:04-cv-1693-T24MSS, 2007 WL 1601750, at *5 (M.D. Fla. June 1, 2007) (Bucklew, J.) (rejecting a relator's request to recover for "block billed" time entries).

3. Clerical Tasks

A fee movant can recover only for a service "traditionally performed" by an attorney. *Williams v. R.W. Cannon, Inc.*, 657 F. Supp. 2d 1302, 1311 (S.D. Fla. 2009). "Clerical work, such as the compilation of facts and statistics, coordinating schedules, basic communications, procedural matters, and housekeeping matters, is usually performed by legal assistants, not lawyers." *Machado v. Da Vittorio, LLC,* No. 09-23069-CIV, 2010 WL 2949618, at *3 (S.D. Fla. July 26, 2010).

First, the defendants object to Klitzman's expending one hour and thirty minutes to revise a fee agreement. The defendants argue that, because the Klitzman firm and the Berger firm entered a fee agreement with the relator in an earlier action, revising that agreement to suit this action is a clerical task. The objection is overruled. A fee agreement is a contract between counsel and the relator, the revision of which typically requires the skill of an attorney.

Second, the defendants object to Langbart's expending four hours and forty-five minutes on June 24, 2015, to "fil[e] [a] motion under seal." (Doc. 50-2 at 2) Filing a motion is a clerical task. *Peress v. Wand*, 597 F. Supp. 2d 1320, 1325 (S.D. Fla. 2008) (Zloch, J.) Even if the entry erroneously stated "filing a motion under seal" instead of "drafting a motion to seal," four hours and forty-five minutes is an excessive amount of time to draft a motion to seal an FCA complaint, which, as the two-page motion to seal (Doc. 2) evidences, is a simple motion that rarely presents a complex issue. Langbart's time is reduced by four hours and forty-five minutes.

Third, the defendants object to Conjeski's preparing a letter for the waiver of service. (Doc. 51 at 10) Preparing a notice that complies with Rule 4(d), Federal Rules of Civil Procedure, is a legal task for which Conjeski modestly expended two hours to complete. The objection is overruled.

Fourth, the defendants object to Klitzman's expending one hour to "file motion to dismiss [and] verify middle district log in procedures for filing responses to motion." (Doc. 50-2 at 4) Filing a motion is a clerical task for a legal assistant — not an experienced attorney — to perform. *Peress*, 597 F.2d at 1325. Also, the relator never moved to dismiss. Klitzman's time is reduced by one hour.

Finally, the defendants object to Langbart's expending "1.41 (*sic*) hours" to "research amended filing certificate of service," research apparently prompted by Klitzman's failure to include in a motion a certificate of service. (Doc. 50-2 at 4) The relator cannot reasonably request that the defendants pay for counsel's

edification about basic filing and service requirements. Langbart's time is reduced by 1.41 hours.

4. Vague Entries

The defendants argue that the vagueness of several entries precludes a reliable determination of the task performed by counsel. *Hensley*, 461 U.S. at 441 ("[T]he party who seeks payment must keep records in sufficient detail that a neutral judge can make a fair evaluation of the time expended [and] the nature and need for the service.")

The defendants object to the log entry in which Klitzman expended two hours to "draft Norman revisions." Although the entry in isolation appears impermissibly vague, a review of the adjacent log entries reveals that Klitzman expended these two hours revising the complaint. The objection is overruled.

Also, defendants object to Langbart's expending (1) 2.5 hours on a "[p]hone call with Federal District Court," (2) 0.72 (*sic*) hours conducting "research," and (3) 1.96 (*sic*) hours to "[r]esearch middle district." Because these entries are impermissibly vague, Langbart's time is reduced by 5.18 hours.

Finally, the defendants object that log entries often fail to describe the issue discussed on a conference call, such as Klitzman's participation on a "[c]all with Dan re: Norman" and Langbart's participation on a "[p]hone call with team." (Doc. 51 at 17) *Am. Charities*, 278 F. Supp. 2d at 1318 (holding that a fee movant must provide a description "of the persons participating in the conference and the issues that were

discussed.") (Doc. 51 at 17) Klitzman's time is reduced by seven hours and thirty minutes and Langbart's time is reduced by thirty minutes.

5. Non-Compensable Time

The defendants argue that the relator cannot recover for hours expended negotiating the relator's share of the government's recovery and preparing the fee agreement. The weight of authority persuasively reasons that because a defendant has no right to participate in a negotiation between the relator and the government, a relator cannot recover for the time expended by counsel to negotiate the relator's share. *Thompson v. Walgreen Co.*, 621 F. Supp. 2d 710, 727 (D. Minn. 2009); *Becker v. Tools & Metals, Inc.*, No. 3:05-cv-0627, 2013 WL 1293818, at *17 (N.D Tex. Mar. 31, 2013); *Simring v. Univ. Physician Assocs.*, No. 04-3530, 2012 WL 10033888, at *13 (D.N.J. Oct. 2, 2012). The relator cannot recover the time expended negotiating the share of the government's recovery or preparing the fee agreement. Klitzman's time is reduced by seven hours and Miller's time is reduced by thirty minutes. Also, the defendants meritoriously object (Doc. 51 at 19) that the relator cannot recover for the time expended by counsel to revise billing records. Miller's time is reduced by 1.3 hours.

6. Expenses

The relator requests $3,001.65 comprising the filing fee, travel expense, telephone expense, legal research expense, "investigator" expense, and "title search" expense but submits no receipt or invoice to support the requested expenses.

Regardless, the telephone, and legal research are non-compensable overhead. *DeKalb Med. Ctr., Inc. v. Specialities & Paper Prods. Union No. 527*, No. 1:13-cv-343, 2015 WL 4231774, at *4 (N.D. Ga. July 13, 2015) (Thrash, J.). And the relator cannot recover unsubstantiated "travel & travel incidentals" entailed by the relator's decision to retain Philadelphia and Miami counsel. The relator proffers no basis for requiring the defendants to pay for a private investigator or for a title search. The relator can recover the $400 filing fee.

**CONCLUSION**

The motion (Doc. 50) for an attorney's fee is **GRANTED**, and the relator is awarded $78,967.50 for an attorney's fee and costs, which award bears interest in accord with 28 U.S.C. § 1961. The motion (Doc. 52) for leave to reply is **DENIED-AS-MOOT**, and the motion (Doc. 48) to extend the time within which to submit a stipulated form of final judgment or dismissal is **GRANTED**. No later than **MARCH 14, 2019**, the parties may either (1) move to vacate the dismissal for good cause or (2) submit a stipulated form of final order or judgment.

ORDERED in Tampa, Florida, on February 26, 2019.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE